Herbert JOHNSON, Plaintiff,

v.

CITY OF FORT LAUDERDALE, FLORIDA, a Florida municipal corporation, James Sparr, Rick Earle, Dennis Sheehan, Keith Allen and Ron Pritchard, in their individual capacities, Defendants.

No. 94–7240–CIV–GONZALEZ.

United States District Court, S.D. Florida.

Sept. 20, 1995.

Scott Walter Rothstein, Michael A. Pancier, Kusnick & Rothstein, P.A., Fort Lauderdale, FL, for plaintiff.

Gordon Dean Rogers and Frank Howard Henry, Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, Miami, FL, for defendants.

## ORDER

GONZALEZ, District Judge.

**THIS CAUSE** has come before the Court upon Plaintiff's Motion to Alter or Amend This Court's Order, Dated April 12, 1995, Dismissing Counts I, II and III of Plaintiff's Complaint as to Defendant, City of Fort Lauderdale, Florida, filed on April 25, 1995. The motion has been fully briefed and is ripe for disposition. Plaintiff has also requested oral argument on this motion. Finally, still pending is Defendant Ron Pritchard's Motion to Dismiss, filed on April 5, 1995. This motion, which is identical to the motion to dismiss previously filed by the other defendants, is also ripe for disposition.

Plaintiff in this case, a former Fort Lauderdale Fire Department lieutenant, asserts several claims for racial discrimination under various provisions of Title 42 of the United States Code. In their motions to dismiss, Defendants sought, and Pritchard still seeks, dismissal of Plaintiff's claims under 42 U.S.C. §§ 1981, 1983 and 1985. On April 12, 1995, this Court entered an Order granting in part Defendants' motion. Shortly thereafter,

Plaintiff filed his motion to alter or amend. Having carefully reconsidered the law surrounding Defendants' motions and the arguments of counsel, this Court agrees with Plaintiff that a portion of its April 12, 1995 Order should be amended.

Therefore, having considered Plaintiff's motion and the record, and being otherwise duly advised, it is hereby **ORDERED** and **ADJUDGED** that Plaintiff's Motion to Alter or Amend is **GRANTED**. Accordingly, this Court's Order of April 12, 1995, granting in part Defendants' Motion to Dismiss is **VACATED** and the following Order is entered in its stead.

*Count I*

Count I of Plaintiff's Complaint asserts a cause of action under 42 U.S.C. § 1981 against the City of Fort Lauderdale and Defendants Sparr, Earle, Sheehan, Allen and Pritchard in their individual capacities. According to Defendants, *Jett v. Dallas Independent School District* requires dismissal of Plaintiff's § 1981 claim in its entirety. 491 U.S. 701, 733, 109 S.Ct. 2702, 2722, 105 L.Ed.2d 598 (1989). In *Jett,* the Supreme Court concluded that:

Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981.

*Id,* at 731–32, 109 S.Ct. at 2720–21 (citation omitted) (emphasis added in *Jett*).

▆ Notwithstanding this language, Plaintiff argues that the 1991 amendments to the Civil Rights Act, specifically the amendments to 42 U.S.C. § 1981, overruled *Jett* and created an express cause of action for violations of § 1981 by municipalities. Several cases support Plaintiff's contention. *See Ford v. City of Rockford,* 1992 WL 309603 (N.D.Ill.1992); *Morris v. State of Kan. Dept. of Revenue,* 849 F.Supp. 1421 (D.Kan.1994); *La Compania Ocho, Inc. v. United States Forest Service,* 874 F.Supp. 1242 (D.N.M.1995); *Robinson, et al. v. Town of Colonie, et al.,* 878 F.Supp. 387 (N.D.N.Y.1995); *Arnett v. Davis County School Dist.,* 1993 WL 434053 (D.Utah 1993); *Gallardo v. Board of County Comm.,* 857 F.Supp. 783 (D.Kan.1994). As the Court in *Philippeaux v. North Central Bronx Hosp.* pointed out, however, none of these cases contains a detailed or well reasoned inquiry into whether the amendments to § 1981 overruled *Jett.* 871 F.Supp. 640 (S.D.N.Y.1994). Instead, those courts merely assumed that the addition of subsection (c) to § 1981 altered the prior state of the law.

Careful analysis demonstrates, however, that those courts were incorrect, as the amendments to § 1981 are consistent with the Supreme Court's opinion in *Jett.* Moreover, there is virtually no indication in the legislative history of the 1991 amendments to § 1981 that Congress intended to overrule *Jett.*[1] This Court declines to find such an intention without clear statutory language to that effect.

Before the 1991 amendments to the Civil Rights Act were passed, 42 U.S.C. § 1981 read:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

---

1. The Court finds that the amendments to § 1981 are facially clear and unambiguous. Thus, it is unnecessary to resort to legislative history. Nonetheless, the Court finds that even if the amendments are ambiguous, the legislative history does not support Plaintiff's position. Nowhere in the legislative history is *Jett* cited. Instead, the portions of the legislative history dealing with subsection (c) of § 1981 are concerned almost entirely with *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). House Report No. 102– 40(I) merely notes in passing that the new subsection "also confirms section 1981's coverage of both public and private sector employment. *See Runyon v. McCrary,* 427 U.S. 160 [96 S.Ct. 2586, 49 L.Ed.2d 415] (1976)." House Report No. 102–40(I) at 92, 1991 U.S.C.C.A.N. at pp. 549, 630; *see also,* House Report No. 102–40(II) at 37, 1991 U.S.C.C.A.N. at 731. Thus, the legislative history establishes that subsection (c) to 42 U.S.C. § 1981 was merely intended to codify existing case law. *Jett,* therefore, remains unaltered.

In 1991, the following subsections were added:

(b) "Make and enforce contracts" defined
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
(c) Protection against impairment
The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State Law.

Pub.L. 102–166, Title I, § 101 (1991), 105 Stat. 1071, *as amended*, 42 U.S.C. § 1981(b)–(c).

█ It is clear that subsection (b) was added to § 1981 to overrule *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), in which the Supreme Court held that discrimination during the course of performance of an employment contract did not violate § 1981. Moreover, subsection (c) was intended to codify the Court's holding in *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), that § 1981 prohibits discrimination by private as well as public actors. It was not intended to create a cause of action that did not previously exist.

Most courts that have found *Jett* to be overruled by subsection (c) based their holdings on an erroneous interpretation of *Jett*. The Court in *Jett* did not, as several cases suggest, hold that § 1981 provided no protection for actions taken under color of state law. On the contrary, until the Supreme Court's ruling in *Runyon* there was some doubt as to whether § 1981 protected against anything else. After an exhaustive review of the legislative history of § 1981 and its precursors, the Court in *Jett* concluded that § 1981 prohibits discrimination by individuals acting under color of state law, but does not create a civil cause of action against them. Instead, § 1983 provides the means through which a party aggrieved under § 1981 must seek relief. Moreover, the Court addressed the apparent inconsistency of its ruling with its earlier holding that § 1981 created a cause of action for individuals discriminated against by private parties. According to the Court:

That we have read § 1 of the 1866 Act to reach private action and have implied a damages remedy to effectuate the declaration of rights contained in that provision does not authorize us to do so in the context of the "state action" portion of § 1981, where Congress has established its own remedial scheme. In the context of the application of § 1981 and § 1982 to private actors, we "had little choice but to hold that aggrieved individuals could enforce this prohibition, *for there existed no other remedy to address such violations of the statute.*"

*Jett*, at 731–32, 109 S.Ct. at 2720–21 (citation omitted) (emphasis added in *Jett*). Thus, the Court was merely applying a well established theory of statutory interpretation—where the law creates a right for the special benefit of a particular class of persons, an implied right to obtain judicial relief is also created. *See Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 39–40, 36 S.Ct. 482, 484–85, 60 L.Ed. 874 (1916).

█ After reviewing the amendments to § 1981 and the legislative history, the Court can find no indication that subsection (c) creates a new civil cause of action. Thus, as held in *Jett*, the only means for Plaintiff to seek redress from the City of Fort Lauderdale for its violation of his § 1981 rights is to maintain an action under 42 U.S.C. § 1983. *Accord Garrett v. Clarke Cty. Board of Educ.*, 857 F.Supp. 949 (S.D.Ala.1994); *McFarland v. Folsom*, 854 F.Supp. 862 (M.D.Ala.1994). Plaintiff's § 1981 claim against Defendant, City of Fort Lauderdale, shall therefore be dismissed with leave to amend. Plaintiff's § 1981 claims against the other defendants, however, shall not be dismissed as the reasoning in *Jett* is inapplicable to actions by private parties. *Jett*, at 731, 109 S.Ct. at 2720.

*Count II Through V*

Counts II through V of the Complaint allege violations of 42 U.S.C. § 1983 against Defendants in their various capacities. Defendants argue that all claims under § 1983

should be dismissed "because such constitutional claims are subsumed in their entirety and therefore barred by the comprehensive enforcement scheme provided by Title VII of the Civil Rights Act of 1964, as amended (including the Civil Rights Act of 1991)." [2] In support of their motion, Defendants cite *Middlesex County Sewerage Authority v. Nat'l Sea Clammers Ass'n.*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), *Marrero–Rivera v. Department of Justice of Com. of Puerto Rico*, 800 F.Supp. 1024 (D.P.R.1992), *aff'd*, 36 F.3d 1089 (1st Cir.1994), and similar cases.

Despite Defendants' arguments, these cases could not possibly apply to Counts IV and V of the Complaint; Plaintiff could not assert his individual capacity claims under Title VII. *See Busby v. City of Orlando*, 931 F.2d 764 (11th Cir.1991). Clearly, then, Title VII cannot provide Plaintiff's exclusive remedy against the individual defendants, as this would amount to conferring absolute immunity from discrimination suits upon the employees of the state and its subdivisions.

With regard to Counts II and III, Plaintiff asserts that *Sea Clammers* and the other cases cited by Defendants are off point. According to Plaintiff, what all of these cases share in common is that, in each, the plaintiff attempted to sue under § 1983 for a violation of another federal statute that contained its own comprehensive remedial provisions.[3]

Plaintiff argues that such a situation does not exist in the present case as all of Plaintiff's § 1983 claims arise directly under the Constitution. Thus, Plaintiff asserts that his claims cannot have been supplanted by Title VII's comprehensive remedial scheme.

In *Middlesex County Sewerage Authority v. Nat'l Sea Clammers Ass'n*, the Supreme Court was forced to explore the limitations of its holding in *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), which recognized the right of citizens to use 42 U.S.C. § 1983 to redress violations by state officials of rights created by federal statutes. In *Sea Clammers*, the Court held that "when 'a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983.'" *Id.*, at 20, 100 S.Ct. at 2512, quoting *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 673 n. 2, 99 S.Ct. 1905, 1945 n. 2, 60 L.Ed.2d 508 (1979) (Stewart, J., dissenting).

The question presented here is whether the holding in *Sea Clammers* applies only when a party sues for a violation of a statute which contains its own "comprehensive remedial scheme," or does it also preclude the party from suing under another federal statute where, as here,[4] the facts allegedly con-

---

**2.** The Court presumes that Plaintiff will amend Count I of his Complaint to assert a claim, through 42 U.S.C. § 1983, for a violation of his rights created by 42 U.S.C. § 1981. If Defendants' current argument regarding *Sea Clammers* is correct, it will apply with equal force to Plaintiff's amended claim. Thus, the Court will consider the merit of Defendant's argument as applied to Plaintiff's claim for relief under 42 U.S.C. § 1981.

**3.** As explained below, Plaintiff is incorrect. Several courts, among them the Supreme Court of the United States, have held that a statute with a comprehensive remedial scheme precludes a § 1983 claim even when an "independent" constitutional violation is alleged. *See e.g., Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Smith v. Robinson*, 468 U.S. 992, 1003, 1007, 104 S.Ct. 3457, 3464, 3466, 82 L.Ed.2d 746 (1984), *superseded by statute*, Handicapped Children's Protection Act of 1986, Pub.L. No. 99–372, 100 Stat. 796 (1986), cited in *Board*

*of Educ. of East Windsor Regional School v. Diamond* 808 F.2d 987, 994 (3rd Cir.1986); and cases cited, *infra.*

**4.** While it is true that Plaintiff has not asserted in Counts II or III that Defendant's conduct violated his rights under Title VII, the conduct alleged falls squarely within that Title's reach. Count II alleges that the City of Fort Lauderdale discriminated against Plaintiff while he was employed as a fire fighter. These allegations, if true, constitute prohibited conduct under 42 U.S.C. § 2000e–2(a) and (m). Those provisions provide that:

"It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way

stituting a violation of the other statute are identical to those which would establish a violation of the statute containing the comprehensive remedial scheme? More specifically, can a plaintiff bypass the comprehensive procedural safeguards contained in Title VII, thereby rendering those safeguards a dead letter, merely by bringing a claim under § 1983 for the violation of some other statute or constitutional provision? [5]

Fortunately, this question is not new; many courts have recognized the danger of allowing a plaintiff to bypass the comprehensive remedial scheme of a statute "by the simple expedient of putting a different label on their pleadings." *Preiser,* 411 U.S. at 490, 93 S.Ct. at 1836. Thus, there is a substantial body of case law which, mostly by analogy, helps to guide this Court's inquiry.

■ It is clear that the 1991 amendments to the Civil Rights Act reflect "a marked change in [Congress'] conception of the injury redressable by Title VII . . .," and amount to a dramatic expansion of Title VII's administrative and remedial framework. *United States v. Burke,* 504 U.S. 229, 241 n. 12, 112 S.Ct. 1867, 1874 n. 12, 119 L.Ed.2d 34 (1992). Such an expansion could easily be viewed as an expression by Congress of its intent to preclude the use of 42 U.S.C. § 1981 to remedy racial discrimination in the workplace. It is somewhat counter-intuitive to conclude

that Congress created Title VII, with its extensive procedural steps designed to promote conciliation, but did not intend for it to be the exclusive means of remedying claims of workplace discrimination. Such a scheme would be like building a bypass around a toll booth. This illogic has been recognized by many courts, including the Supreme Court of the United States in such cases as *Middlesex County Sewerage Authority v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

Plaintiff challenges the application of the *Sea Clammers* doctrine in the present case. According to Plaintiff, *Sea Clammers* merely stands for the proposition that § 1983 cannot be used to remedy the violation of a *federal statute* when that statute contains its own comprehensive remedial scheme.[6] Because Counts II and III arise directly under the Constitution, Plaintiff asserts that the *Sea Clammers* doctrine is inapplicable. While Plaintiff is technically correct in his reading of *Sea Clammers,* he is incorrect in his assertion that *Sea Clammers* is of no assistance in resolving the current dispute.

Defendant's argument for the application of *Sea Clammers* is not novel; many courts have relied on that case in concluding that § 1983 claims for independent constitutional violations are precluded by statutes with comprehensive remedial schemes. *See e.g.,*

which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin";
and,
"Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."
Count III alleges that the City of Fort Lauderdale retaliated against Plaintiff for reporting and complaining about instances of racial harassment and discrimination. This conduct, if true, constitutes a violation of 42 U.S.C. 2000e–3(a), which provides that:
"It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

5. The Court notes that there are at least two reasons to think that he usually can. First, individuals traditionally have the right to chose among various available causes of action to redress their injuries, and the existence of one cause of action generally does not preclude the use of another. Second, the argument that one statutory cause of action is precluded by the inclusion of procedural safeguards in another coextensive remedial statute is really one of implied repeal or supplantation. Such repeals are generally not found without clear legislative intent. This is particularly true in the context of civil rights legislation. *See e.g., County of Washington v. Gunther,* 452 U.S. 161, 178, 101 S.Ct. 2242, 2252, 68 L.Ed.2d 751 (1981).

6. That § 1983 could be used to remedy the violation of a federal statute was settled by the Supreme Court in *Maine v. Thiboutot, supra.*

*Pfeiffer v. Marion Center Area School District,* 917 F.2d 779, 789 (3d Cir.1990) (affirming district court's holding that "constitutional claims were 'subsumed' by Title IX and otherwise barred by the doctrine in *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n . . . .*"); *Zombro v. Baltimore City Police Dept.,* 868 F.2d 1364 (4th Cir.1989), *cert. denied,* 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989) (holding that a plaintiff may not "cavalierly bypass the comprehensive process fashioned by Congress in the [Age Discrimination in Employment Act] [7] by merely asserting a violation of a constitutional right rather than a statutory right . . ."); *Ring v. Crisp County Hosp. Authority,* 652 F.Supp. 477, 482 (M.D.Ga. 1987) ("ADEA is the exclusive remedy for claims of age discrimination, whether those claims are founded on the Constitution or on rights created by ADEA.").

While these courts may have erred in finding *Sea Clammers* controlling, they were not wrong in looking to that case as a guide to proper statutory interpretation. It must be remembered that *Sea Clammers* merely elucidates a method of discerning the intent of Congress. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975); *Smith v. Robinson,* 468 U.S. 992, 1011, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984); *Keller v. Prince George's County,* 827 F.2d 952, 965 (4th Cir. 1987) (Wilkinson, J., concurring). Moreover, as already noted above, the Supreme Court itself has extended the reasoning in *Sea Clammers* to apply to independent constitutional claims.

In *Smith v. Robinson,* the Supreme Court rejected the same argument Plaintiff now advances regarding the application of *Sea Clammers.* 468 U.S. at 1009, 104 S.Ct. at 3467. Noting that "[t]he crucial consideration is what Congress intended," the Court had "little difficulty concluding that Congress intended the [Education of the Handicapped Act] [8] to be the exclusive avenue through which a plaintiff may assert an equal protec-

tion claim to a publicly financed special education." *Id.,* at 1009, 1012, 104 S.Ct. at 3467, 3468. After reviewing the elaborate procedural mechanisms included in the EHA, the Court found

> . . . it difficult to believe that Congress also meant to leave undisturbed the ability of a handicapped child to go directly to court with an equal protection claim to a free appropriate education. Not only would such a result render superfluous most of the detailed procedural protections outlined in the statute, but, more important, it would also run counter to Congress' view that the needs of handicapped children are best accommodated by having parents and the local education agency work together to formulate an individualized plan for each handicapped child's education.

*Id.,* at 1011–12, 104 S.Ct. at 3468–69 (citations omitted). Thus, the type of preemptive analysis the Court undertook was really more closely akin to that in *Brown v. General Services Admin.* and *Preiser v. Rodriguez, supra.*

In those cases, the Court applied the rule of construction "that a precisely drawn, detailed statute pre-empts more general remedies." *Brown,* 425 U.S. at 834, 96 S.Ct. at 1968, citing *Preiser,* 411 U.S. at 488–90, 93 S.Ct. at 1835–37. *See also, Block v. North Dakota Ex Rel. Board of University and School Lands,* 461 U.S. 273, 285, 103 S.Ct. 1811, 1819, 75 L.Ed.2d 840 (1983). Of course, this is only true when a statute's enforcement mechanism is comprehensive, thereby evincing Congressional intent to preclude the use of § 1983. *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420. Moreover, the availability of administrative mechanisms alone is not necessarily sufficient to conclude that Congress intended to supplant § 1983. Instead, "the statutory framework must be such that allowing a plaintiff to bring a § 1983 action would be

---

7. The Supreme Court has recognized the strong similarities between Title VII and ADEA, and has stated that it is appropriate to look to Title VII as a helpful model in construing ADEA. *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979).

8. 84 Stat. 175, *as amended,* 20 U.S.C. § 1400, *et seq.*

inconsistent with Congress' carefully tailored scheme." *Id.*, at 107, 110 S.Ct. at 449 (citations omitted).

There is no question that before the 1991 Amendments to the Civil Rights Act were passed, a plaintiff could concurrently maintain actions under Title VII, § 1981, and § 1983. *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Smith v. Lomax,* 45 F.3d 402 (11th Cir.1995); *Cross v. State of Alabama,* 49 F.3d 1490 (11th Cir.1995); *Hardin v. Stynchcomb,* 691 F.2d 1364, 1369 (11th Cir. 1982); *Whiting v. Jackson State University,* 616 F.2d 116, 122 (5th Cir.1980). Thus, the question presented to this Court in the present motion is whether the 1991 Amendments altered the prior state of the law. Because the legislative history treats §§ 1981 and 1983 differently, the Court will consider each provision separately.

■ After careful review of the 1991 Amendments, the legislative history and relevant case law, the Court concludes that Congress specifically intended not to supplant claims brought under 42 U.S.C. § 1981, even when those claims are based upon the same facts that underlie a concurrent claim under Title VII. While Congress may not have directly contemplated the Supreme Court's holding in *Sea Clammers* when it enacted the 1991 Amendments to the Civil Rights Act, it clearly intended to avoid any dilution of the remedies available under § 1981.

The 1991 amendments to the Civil Rights Act were intended to conform the remedies available to victims of religious or gender discrimination to those available to victims of racial discrimination.[9] The Court finds little, if any, suggestion that Congress intended to displace the remedies available under 42

U.S.C. § 1981. While Congress recognized that it was "[expanding] ... Title VII's Remedial Scheme," House Report No. 102–40(I) at 70, 1991 U.S.C.C.A.N. at 608, several provisions in the 1991 amendments were aimed at preventing the result advocated by Defendant by ensuring that victims of discrimination would be able to sue concurrently under § 1981.

First, § 102(a)(1), amending 42 U.S.C. § 1981a, provides:

In an action brought by a complaining party under 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e–2 or 2000e–3), *and provided that the complaining party cannot recover under section 1977 of the Revised Statutes (42 U.S.C. 1981),* the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

Pub.L. 102–166 § 102(a)(1), 105 Stat. 1072 (emphasis added). The highlighted portion, which was included to preclude duplicative recoveries, demonstrates Congress' continuing intent to permit claimants to proceed both under Title VII and § 1981. Even more persuasive is the language contained in subsection (b)(4), wherein the statute provides that "[n]othing in this section shall be construed to limit the scope of, or the relief available under, section 1977 of the Revised Statutes (42 U.S.C.1981)."

Moreover, statements in the Legislative History further demonstrate Congress' intent to make Title VII a coordinate remedy

---

9. Thus, House Report No. 102–40(I) states that: an unfair perference (sic) exists in federal civil rights law. Current civil rights laws permit the recovery of unlimited compensatory and punitive damages in cases of intentional *race* discrimination. No similar remedy exists in cases of intentional *gender or religious* discrimination. Victims of intentional *race* discrimination are entitled under 42 U.S.C. section 1981 not only to equitable relief, but also to

compensatory damages, and in particularly egregious cases, punitive damages as well. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975); *see also Patterson v. McLean Credit Union,* 491 U.S. 164, 182 n. 4, 109 S.Ct. 2363, 2375 n. 4, 105 L.Ed.2d 132 (1989). House Report No. 102–40(I) at 65, 1991 U.S.C.C.A.N. 549, 603 (emphasis in the original).

with § 1981. Thus, House Report 102-40(I) notes that "[t]he provision thus authorizes damage awards in Title VII cases in the same circumstances as such awards are now permitted under 42 U.S.C. section 1981 for intentional race discrimination." House Report No. 102-40(I) at 74, 1991 U.S.C.C.A.N. at 612.[10] Contrary to Defendant's assertion, the amendment to 1981a(b)(1) prohibiting the award of punitive damages against governments and their subdivisions does not reflect an intent to make Title VII the exclusive means of proceeding against such agencies for workplace racial discrimination. To the contrary, it merely reflects Congress' effort to ensure that the remedies available under Title VII do not exceed those available under § 1981. *See Walters v. City of Atlanta,* 803 F.2d 1135, 1147-48 (11th Cir.1986); *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 259-66, 101 S.Ct. 2748, 2755-59, 69 L.Ed.2d 616 (1981). Again, this demonstrates an intent to integrate these two statutes and coordinate their remedies; it does not reflect an intent to prohibit an aggrieved individual from using § 1983 to vindicate his rights under § 1981.

Thus, both the 1991 Amendments themselves, and the legislative history surrounding their enactment, demonstrate Congressional intent to expand the remedies available under Title VII while leaving those available under § 1981 unimpaired. The mere fact that a plaintiff suing a state actor for a violation of § 1981 must do so through § 1983 should not alter this result. The Supreme Court's opinion in *Jett v. Dallas Independent School District* was not intended to impose different obligations under § 1981 upon state actors and private parties. Instead, it merely recognized that no implied cause of action under § 1981 needed to be created in the context of state actors, as it had been for private employers in *Runyon v. McCrary,* because § 1983 already provided a vehicle to remedy violations of § 1981.

■ In conclusion, the Court holds that the 1991 Amendments to the Civil Rights Act do not preclude an aggrieved party from

concurrently bringing an action under 42 U.S.C. § 1983 for a violation of his rights under 42 U.S.C. § 1981. *Accord, Lightner v. City of Ariton,* 884 F.Supp. 468 (M.D.Ala. 1995); *Grooms v. Wiregrass Elec. Coop., Inc.,* 877 F.Supp. 602, 607 (M.D.Ala.1995). Therefore, Plaintiff shall be permitted amend his Complaint to assert a claim, pursuant to 42 U.S.C. § 1983, for a violation of his rights created by 42 U.S.C. § 1981.

A more difficult question is presented by Defendants' motion to dismiss Counts I and II, as those counts involve claims brought pursuant to § 1983 for alleged violations of independent constitutional rights. While there are numerous references in the legislative history of the 1991 Amendments regarding Congress' intent not to supplant § 1981, there are none concerning § 1983. This could be viewed as an expression by Congress to make § 1981 the sole exception to Title VII's preclusive effect. *See Marrero-Rivera v. Dept. of Justice,* 800 F.Supp. 1024, 1032 (D.P.R.1992) (holding that structure of Title VII after 1991 Amendments indicates an "intent on the part of Congress to make Title VII whole to the exclusion of section 1983"). The Supreme Court itself reached a similar conclusion when it considered the addition of § 717 to Title VII. *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Noting the lack of expression in the legislative history of congressional intent *not* to supplant other state and federal statutes, the Court concluded that Title VII provided the sole workplace discrimination remedy available to federal employees. *Id.,* at 832-34, 96 S.Ct. at 1967-69. This conclusion was reached despite the fact Title VII had already been interpreted as providing relief co-extensive with other federal civil rights statutes. *Id.,* at 833-34, 96 S.Ct. at 1968-69, citing *Johnson v. Railway Express Agency,* 421 U.S. 454, 459, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975) and *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 48, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974).

---

**10.** *See also,* Minority Views on H.R. 1, House Report No. 102-40(I) 124, 146, 1991 U.S.C.C.A.N. 653, 675 ("Proponents contend that

'parity' with section 1981 must be achieved through amending Title VII to include such damages.")

While *Brown* lends strong support to Defendants' argument, the Court is persuaded that Congress did not intend to supplant other federal civil rights remedies when it enacted the 1991 Amendments to the Civil Rights Act. Unlike the provision considered in *Brown*, an entirely new cause of action was not created by the 1991 Amendments. Instead, additional remedies were added. Thus, while the comprehensive remedial scheme of Title VII was significantly expanded, the 1991 Amendments must be viewed against the backdrop of earlier additions to Title VII. Particularly instructive are the 1972 Amendments, which were clearly not intended to supplant the preexisting remedy under § 1983 for discriminatory acts by state employers. The legislative history is abundantly clear on this issue.[11]

A court "should not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right." *Golden State Transit v. City of Los Angeles*, 493 U.S. at 107, 110 S.Ct. at 449 (citations omitted). In light of this admonition, and Congress' clear intent to avoid supplanting § 1983 when it passed the 1972 Amendments to the Civil Rights Act, the Court finds inapplicable the rule of statutory interpretation applied in such cases as *Brown v. General Services Administration, Smith v. Robinson,* and *Preiser v. Rodriguez.* Instead, the Court finds sufficient indicia of congressional intent to conclude that the 1991 Amendments to the Civil Rights Act did not alter the prior state of the law. In short, Defendants have not carried their burden of proving that the remedy available under § 1983 was withdrawn by the 1991 Amendments. *See Golden State Transit,* at 107, 110 S.Ct. at 449. Accordingly, Defendants' motions to dismiss Counts II and III of Plaintiff's Complaint shall be denied.

*Count VIII*

Defendant argues that Plaintiff's claim for conspiracy under 42 U.S.C. § 1985(3) must be dismissed for three reasons: first, Defendant argues that employees of the same governmental entity cannot conspire; second, Defendant claims that Count VIII is not plead with sufficient specificity; third, Defendant asserts that the *Sea Clammers* Doctrine bars Plaintiff's claim in Count VIII to the extent that it is based upon the violation of his rights under Title VII.

As for the first of these arguments, the Court is not persuaded to abandon its position in *Jacobs v. Board of Regents,* 473 F.Supp. 663, 670 (S.D.Fla.1979). As for Defendants' second argument, the Court finds Plaintiff's allegations sufficient to state a cause of action under § 1985(3). Finally, the Court agrees with Defendant that, to the extent Count VIII is based upon a violation of Title VII, it is barred by the *Sea Clammers* Doctrine.

The Court has reviewed the motion and the record, and being otherwise duly advised, it is hereby:

**ORDERED** and **ADJUDGED** as follows:

1. Defendant City of Fort Lauderdale's motion to dismiss Count I of the Complaint is **GRANTED** and that Count is **DISMISSED** with leave to amend.

2. All other Defendants' motions to Dismiss Count I of the Complaint are **DENIED**.

3. Defendants' motions to dismiss Counts II through V of the Complaint are **DENIED**.

4. Defendant City of Fort Lauderdale's motion to dismiss Count VIII of the Complaint is **GRANTED** to the extent that Count is asserted for a violation of Plaintiff's rights under Title VII. In all other respects, Defendants' motions to dismiss count VIII are **DENIED**.

5. Plaintiff's Request for Oral Argument is **DENIED**.

6. This Order involves controlling questions of law as to which there are substantial grounds for differences of opinion and an immediate appeal of this Order will materially advance the ultimate termination of the litigation. Accordingly, the parties are

---

11. For an excellent review of the legislative history surrounding the 1972 Amendments to the Civil Rights Act, *see Keller v. Prince George's County,* 827 F.2d 952 (4th Cir.1987).

granted leave to appeal this Order immediately pursuant to 28 U.S.C. § 1292(b).

**DONE AND ORDERED.**