**Harold H. TABOR, Plaintiff,**

v.

**CITY OF CHICAGO; Gene Dangler, individually, and as agent of City of Chicago; Stan Kaderbek, individually, and as agent of City of Chicago; and Ron Biamonte, individually, and as agent of the City of Chicago, Defendants.**

**No. 97 C 5742.**

United States District Court,
N.D. Illinois,
Eastern Division.

July 10, 1998.

---

Kimberly Ann Duda, Maduff & Millsaps, Ayesha Salima Hakeem, Chicago, IL, for Plaintiff.

Genevieve Mary Daniels, City of Chicago Corporation, Counsel's Office, Tracey Renee Ladner, David J. Seery, Brian L. Crowe, City of Chicago, Law Dept., for Defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Harold H. Tabor has filed a four-count amended complaint against defendants City of Chicago ("the City"), and City employees Gene Dangler ("Dangler"), Stan Kaderbek ("Kaderbek"), and Ron Biamonte ("Biamonte"). Plaintiff sues Dangler, Kaderbek, and Biamonte both in their individual and official capacities. In Count I, plaintiff alleges discrimination on the basis of race in violation of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000(e), et seq., against the City. In Count II, plaintiff alleges discriminatory interference with the right to contract in violation of 42 U.S.C. § 1981 against the City and the individual defendants. In Count III, plaintiff alleges that the City and the individual defendants, acting under color of state law, intentionally deprived him of his right to be free from racial

discrimination and attempts to state claims against them under Title VII, the Fourteenth Amendment, and 42 U.S.C. § 1983. In Count IV, plaintiff alleges that the City and the individual defendants conspired under color of state law to deprive him of his civil rights, and attempts to state claims against them under 42 U.S.C. § 1983 and § 1988. Defendants have moved pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss Counts II, III, and IV. For reasons stated below, defendants' motion is granted. Plaintiff is granted leave to file a second amended complaint.

## BACKGROUND

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1428 (7th Cir.1996). Plaintiff, an African–American male, was hired by the City of Chicago around October 1, 1990, as a carpenter for the Department of Transportation. Plaintiff continued in this position until he was promoted to carpenter sub-foreman around July 16, 1993. He worked as a carpenter sub-foreman until November 1, 1995, at which time he was demoted to his prior position. While plaintiff worked as a carpenter sub-foreman, his performance met or exceeded the expectations of the Department of Transportation. Moreover, he had as much or more seniority than other, non-African-American employees who were not demoted.[1] Plaintiff contends that the City and individual defendants Dangler, Kaderbek, and Biamonte intentionally demoted him on the basis of his race. On February 16, 1996, plaintiff filed a charge with the EEOC in which he alleged racial discrimination against the City based on his demotion. The EEOC issued a

Notice of Right to Sue on July 23, 1997. Plaintiff filed this suit on August 14, 1997.

## DISCUSSION

### I. Standard for a Motion to Dismiss

A complaint should not be dismissed pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 811, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In reviewing a motion to dismiss, the court tests the sufficiency of the complaint, not the merits of the suit. *Triad Assoc., Inc. v. Chicago Housing Auth.,* 892 F.2d 583, 586 (7th Cir.1989). Additionally, a plaintiff in federal court need not plead facts; he can plead conclusions so long as those conclusions provide the defendant with at least minimal notice of the claim. *Jackson v. Marion County,* 66 F.3d 151, 153–54 (7th Cir.1995).

In their motion to dismiss, the defendants contend: (1) that the claims against the individual defendants in their official capacities should be dismissed with prejudice because they are redundant; (2) that Counts II, III, and IV should be dismissed with prejudice to the extent that they are barred by the statute of limitations; (3) that Counts II, III, and IV should be dismissed because plaintiff has failed to state a claim against the City under § 1981 or § 1983; (4) that Count IV should be dismissed because the intracorporate conspiracy doctrine bars plaintiff's claim; and (5) that Count IV should be dismissed because it fails to state a valid conspiracy claim.[2] The court will address these issues in turn.

---

1. Plaintiff does not specify in his complaint whether these employees held positions as carpenter sub-foremen.

2. The defendants have also moved to dismiss Count III for the following reasons: (1) it purports to bring a Title VII claim against individual defendants; (2) it purports to bring a Title VII claim against the City premised on facts and allegations not contained in plaintiff's EEOC charge; (3) it fails to state a claim under the Fourteenth amendment; and (4) it fails to state a valid claim under § 1983 against the individual

defendants. In plaintiff's response to defendants' motion to dismiss, plaintiff concedes it was improper to include Title VII and Fourteenth Amendment language in Count III and has agreed to amend Count III to remove these causes of action. Additionally, plaintiff has agreed to clarify the ambiguity with respect to the individual defendants by specifically alleging that each acted under color of state law. Because plaintiff has volunteered to amend Count III to correct these issues, the court will not address them.

## II. Claims Against Individual Defendants in Their Official Capacities

Plaintiff sues the City and the individual defendants in their official capacities. Plaintiff's claims against the individuals in their official capacities are redundant because suits against municipal agents in their official capacities are actually suits against the municipality. *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). To allow plaintiff to sue both the City and its agents would essentially allow the plaintiff to sue the City twice for the same set of allegations. Accordingly, courts have routinely dismissed claims against municipal agents in such cases. *David v. Village of Oak Lawn*, 1996 WL 210072, at *5 (N.D.Ill. April 29, 1996); *Amati v. City of Woodstock*, 829 F.Supp. 998, 1011 (N.D.Ill.1993). The court therefore dismisses plaintiff's claims against the individual defendants in their official capacities with prejudice. Similarly, the court dismisses plaintiff's prayers for punitive damages against the individual defendants in their official capacities.

## III. Statute of Limitations

Plaintiffs have moved to dismiss Counts II, III, and IV to the extent that they are barred by the statute of limitations. The statute of limitations for both § 1981 and § 1983 claims is two years. *Harris v. City of Chicago*, 1998 WL 59873, at *9 (N.D.Ill. Feb. 9, 1998). Plaintiff has alleged that he was demoted on the basis of his race and that after he complained about it, he was harassed and retaliated against by the defendants. Plaintiff's demotion occurred on November 1, 1995. Because plaintiff filed this lawsuit on August 14, 1997, all of the injuries alleged in Counts II, III, and IV fall within the two-year period. Therefore, his claims are not barred by the statute of limitations.

## IV. Section 1981 Claim Against the City

In Count II, plaintiff attempts to state a claim against the City under 42 U.S.C. § 1981(a), which provides that all persons within the jurisdiction of the United States shall have the freedom to make and enforce contracts without being discriminated against on the basis of race. Although neither party has raised the issue, the first question the court must address is whether plaintiff may bring a § 1981 claim directly against the City. In *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), the Supreme Court held that a plaintiff may not proceed directly against a municipality under § 1981 for its violations of that section, but instead must bring such claims under § 1983. *Id.* at 735, 109 S.Ct. 2702. Additionally, the Court held that municipalities cannot be held vicariously liable under the doctrine of respondeat superior for § 1981 violations committed by its employees. *Id.* at 735–36, 109 S.Ct. 2702.

Whether *Jett* remains good law, however, is an unsettled question. Several courts have held that one or both of the Court's holdings in *Jett* have been overruled by the Civil Rights Act of 1991, which amended § 1981. *See, e.g., Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir.1996); *Ford v. City of Rockford*, 1992 WL 309603, at *2 (N.D.Ill. Oct.15, 1992); *Arnett v. Davis County Sch. Dist.*, 1993 WL 434053, at *5 n. 8 (D.Utah April 5, 1993); *Morris v. Kansas Dep't of Revenue*, 849 F.Supp. 1421, 1426 (D.Kan.1994). These courts have found that as a result of the 1991 amendments, plaintiffs may now sue municipalities directly under § 1981. Their opinions have been based largely on the addition of § 1981(c), which provides: "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of state law."

Other courts, however, have held that *Jett* remains good law. *See, e.g., Dennis v. County of Fairfax*, 55 F.3d 151, 156, n. 1 (4th Cir.1995); *Nolen v. City of Chicago*, 1998 WL 111675, at *3–6 (N.D.Ill. Mar.4, 1998); *Johnson v. City of Fort Lauderdale*, 903 F.Supp. 1520, 1523 (S.D.Fla.1995). These courts have held that neither the language of § 1981(c) nor its legislative history support the conclusion that Congress intended to overrule *Jett* and allow a direct cause of action against state actors under § 1981. *See Nolen*, 1998 WL 111675, at *6; *Johnson*, 903 F.Supp. at 1522–23.

This court agrees with those courts that have held that *Jett* remains good law. Both

the plain language of § 1981(c) and the legislative history of the Civil Rights Act of 1991 support this conclusion. The language of § 1981(c) does not explicitly allow plaintiffs a direct cause of action against state actors. The fact that the amendment is facially clear and unambiguous should settle the question. *Johnson*, 903 F.Supp. at 1522 n. 1. If Congress had intended to amend § 1981 to allow, for the first time, a cause of action against state actors, it presumably would have expressly provided for such a cause of action in § 1981(c). Yet, it did not.

At the very least, one might expect Congress to have expressed its intention to provide for a direct cause of action against state actors under § 1981 in the legislative history. The legislative history, however, states only that the purpose of § 1981(c) is to codify *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). H.R.Rep. No. 102–40(II) (1991). *Runyon* involved the issue of whether § 1981 prohibited private schools from excluding qualified school children solely on the basis that they were African–American. *Runyon*, 427 U.S. at 163, 96 S.Ct. 2586. The Court held that it did. *Id.* at 172, 96 S.Ct. 2586. *Runyon* is significant for its affirmation of two principles: (1) that § 1981 prohibits discrimination by private parties; and (2) that § 1981 affords plaintiffs an implied cause of action against discrimination committed by private parties. *Fed'n of African Am. Contractors*, 96 F.3d at 1213. Prior to *Runyon* and related cases, there was some belief that § 1981 prohibited discrimination committed only by state actors. *Runyon*, 427 U.S. at 170, 96 S.Ct. 2586; *Johnson*, 903 F.Supp. at 1523. By codifying *Runyon*, Congress affirmed the principle that § 1981 prohibits discrimination by private actors in addition to state actors.

*Runyon* is equally significant for principles it did not contain. *Runyon* did not address the question of whether plaintiffs may sue state actors directly under § 1981. Consequently, any claim that Congress intended to provide for an implied cause of action under § 1981 against state actors is at odds with the stated purpose of § 1981(c) as contained in the legislative history. Congress stated that it intended to "codify" *Runyon*, not expand it.

Additionally, the legislative history is devoid of any reference to *Jett*. Given the great extent to which Congress criticized and overruled other Supreme Court cases, Congress' failure to mention *Jett* cannot be attributed to oversight or respectful restraint. *See Nolen*, 1998 WL 111675, at *5 (cataloguing an extensive list of cases that Congress criticized and overruled in the legislative history of the Civil Rights Act of 1991). Thus, between the language of § 1981(c) and the legislative history, there is scant evidence that Congress intended to allow a cause of action against state actors, and thereby overrule *Jett*.

Thus, the question becomes why other courts have found that *Jett* was overruled. The basic argument is as follows: because § 1981(c) prohibits impairment of the right to make and enforce contracts by both state and private actors, Congress intended to create parallel protections for § 1981 violations. Because § 1981(c) extends parallel protections, it must extend parallel remedies. *Fed'n of African Am. Contractors*, 96 F.3d at 1213.

This argument fails because the Court had already directly addressed this issue in *Jett*. In holding that § 1981 did not afford an implied cause of action against state actors, the Court addressed the apparent inconsistency of allowing an implied cause of action against private actors but not state actors (491 U.S. at 731–32, 109 S.Ct. 2702):

> That we have read § 1 of the 1866 Act to reach private action and have applied a damages remedy to effectuate the declaration or rights contained in the provision does not authorize us to do so in the context of the "state action" portion of § 1981, where Congress has established its own remedial scheme. In the context of the application of § 1981 and § 1982, we "had little choice but to hold that aggrieved individuals could enforce this prohibition, for there existed no other remedy to address such violations of the statute".... That is manifestly not the case here...

Thus, the Court had inferred a cause of action against private parties because there was no express remedy available under

§ 1981, and no alternative remedy available. Had the Court not inferred a remedy, plaintiffs would have had no means to enforce the rights protected by § 1981 when the discrimination was committed by private actors. In the case of discrimination by state actors, however, Congress had already created a cause of action in § 1983. It was therefore not necessary to infer a cause of action when state actors violated § 1981, because § 1983 served as means to redress such violations.

 Given that the Court squarely addressed this issue just two years before the Civil Rights Act of 1991, it is all the more difficult to believe that Congress overlooked *Jett.* Had Congress·been troubled by this explanation, it almost undoubtedly would have overruled it. Thus, the court finds that the § 1981 allegations against the City are barred by *Jett.* Plaintiff may assert his § 1981 allegations in Count II under § 1983 in his second amended complaint. In doing so, the court reminds plaintiff that he must sufficiently allege that his § 1981 violations were caused by a municipal policy or custom.[3]

## V. Section § 1983 claim Against the City in Count III

 Defendants have moved to dismiss Count III against the City for failure to state a valid claim under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives another of his or her constitutional rights. 42 U.S.C. § 1983. Bodies of local government are "persons" within the meaning of § 1983. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 663, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To state a claim against the City under § 1983, plaintiff must allege: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so

permanent and well settled as to constitute·a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority.'" *McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir.1995) (quoting *Baxter by Baxter v. Vigo County School Corp.,* 26 F.3d 728, 734–35 (7th Cir.1994)).

 To state a claim under a custom or usage theory the plaintiff must allege an unconstitutional pattern of conduct, including incidents other than those in the plaintiff's own case giving rise to an inference that an unconstitutional custom, policy, or practice must exist. *Silva v. City of Chicago,* 1996 WL 535244, at \*4 (N.D.Ill.· Sept.18, 1996). When such a theory is used, proof of a single act of misconduct will not suffice; for it is the series of unconstitutional acts that supports the inference that an unconstitutional custom exists. *Jackson v. Marion County,* 66 F.3d 151, 152 (7th Cir.1995).

There is no heightened pleading standard for § 1983 claims. *Id.* at 152. With this in mind, it evident that plaintiff has successfully stated a claim under against the City in Count III. Plaintiff has alleged: (1) that he was demoted on the basis of his race; and (2) that "defendants·have engaged in widespread discriminatory practices which have affected numerous employees over a period of years." These allegations, taken as true, support the inference that an unconstitutional custom exists. Although the allegations lack specificity, they sufficiently provide the City with notice of the claim. Count III therefore states a claim against the City. Plaintiff must, however, amend Count III in a manner consistent with the concessions referred to in footnote two of this opinion.

## VI. Intracorporate Conspiracy Doctrine

 In Count IV, plaintiff alleges that defendants conspired to deprive him of his

---

**3.** Indeed, even if the court did find that plaintiff could bring an action against the City directly under § 1981, plaintiff's argument that the City can be held vicariously liable under the doctrine of respondeat superior for the § 1981 violations of its employees would fail. The two highest courts that have ruled on *Jett*—the Fourth and the Ninth Circuits—have split on whether the first holding in *Jett* has been overruled by the·

Civil Rights Act. *Compare Fed'n of African Am. Contractors v. City of Oakland,* 96 F.3d 1204, 1214 (9th Cir.1996) *with Dennis v. County of Fairfax,* 55 F.3d 151, 156, n. 1 (4th Cir.1995). Yet, those courts agreed that the second holding in *Jett*—that a municipality is not vicariously liable for the acts of its employees—is still good law.

constitutional right to be free of discrimination based on his race, and attempts to state a claim under § 1983. Defendants argue that these allegations should be dismissed because they are barred by the intracorporate conspiracy doctrine. Under the doctrine, employees of a corporation who jointly pursue its lawful business do not become "conspirators" when acts within the scope of their employment are said to be discriminatory or retaliatory. *Travis v. Gary Community Mental Health Center, Inc.*, 921 F.2d 108, 110 (7th Cir.1990). The policy behind the doctrine is to preserve independent decision-making by business entities and their agents free of the pressure that can be generated by allegations of conspiracy. *Id.*

■■■ The Seventh Circuit has held that the intracorporate conspiracy doctrine applies to § 1985 claims against governmental entities. *Wright v. Illinois Dept. of Children & Family Services*, 40 F.3d 1492, 1507–1508. Although the Seventh Circuit has not addressed whether the doctrine extends to § 1983 claims, the overwhelming majority of judges in this district, including this one, have held that it does. *See David v. Village of Oak Lawn*, 1996 WL 210072 at *4 (N.D.Ill. April 29, 1996); *Doe v. Board of Education of Hononegah Community High School Dist. 207*, 833 F.Supp. 1366, 1382 (N.D.Ill.1993); *Rojicek v. Community Consolidated School Dist. 15*, 934 F.Supp. 280, 281 (N.D.Ill.1996); *Howard v. Board of Education of Sycamore Community Unit School Dist. 427*, 893 F.Supp. 808, 820 (N.D.Ill.1995); *Cromley v. Board of Education of Lockport Township High School Dist. 205*, 699 F.Supp. 1283, 1291–92 (N.D.Ill.1988), *aff'd*, 17 F.3d 1059 (7th Cir.1994). Application of the doctrine does not depend on whether the conspirators' actions were wrongful, but whether the wrongful conduct was performed within the scope of the conspirators' official duties. *Doe*, 833 F.Supp. at 1382. Where the defendants' ability to injure a plaintiff derives solely from their positions within the entity for which they work, and the influence they wield therefrom, the doctrine will apply. *Id.*

The facts of this case support application of the intracorporate conspiracy doctrine to Count IV. First, plaintiff has not alleged that any persons outside the employment of the City conspired to deprive him of his constitu-tional rights. Second, defendants' ability to injure plaintiff was derived solely from their official positions as employees of the City. Plaintiff has complained that he was demoted on the basis of his race and then treated harshly by his supervisors in retaliation for his complaints. If the individual defendants had not been employed by the City, they would not have been in a position to demote the defendant or to retaliate against him.

Plaintiff cites one case in support of his argument that the court should not apply the intracorporate conspiracy doctrine to Count IV: *Salto v. Mercado*, 1997 WL 222874, at *1 (N.D.Ill. April 24, 1997). In *Salto*, the court decided not to extend the doctrine to a § 1983 claim. Although the court recognized that several judges in this district had extended the doctrine in cases involving school administrators and employment claims, the court distinguished the facts of the case before it, partially on grounds that it involved police misconduct. *Id.* The instant case, of course, involves an employment claim, a type of case in which judges in this district have applied the doctrine. Because plaintiff has not presented any compelling argument to distinguish his case from the general approach that this district has taken, the court rejects plaintiff's argument.

Plaintiff also argues in his brief in opposition to the motion to dismiss that the doctrine should not apply because the individual defendants were motivated solely by personal bias. In such cases, courts have found an exception to the application of the doctrine. *Hartman v. Board of Trustees of Community College Dist. 508*, 4 F.3d 465, 469 (7th Cir.1993). Plaintiff's argument fails, however, because plaintiff did not allege that defendants were motivated solely by personal bias. To the contrary, in Count IV plaintiff alleges systemic and institutional discrimination against him. Thus, the court finds that the intracorporate conspiracy doctrine bars Count IV.

### CONCLUSION

Defendants' motion to dismiss is granted. Plaintiff's amended complaint is dismissed without prejudice. The court grants plaintiff leave to file a second amended complaint on

or before July 31, 1998. Defendants shall respond thereto by August 20, 1998. This matter is set for a report on status on August 25, 1998, at 9:00 a.m., at which time the parties are directed to present a final discovery plan.