**John and Jane DOE, Individually and on Behalf of a Minor Plaintiff, Jane Doe II, Plaintiffs,**

v.

**GRANBURY ISD, et al., Defendants.**

No. 4:97–CV–641–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

June 11, 1998.

Lars Berg, Howell Dorman Anderson Berg & Smyer, Fort Worth, TX, for Lars Berg, Guardian Ad Litem.

Rickey J. Brantley, Jose Henry Brantley & Keltner, Fort Worth, TX, for John Doe and Jane Doe, Individually and on behalf of a minor plaintiff, Jane Doe II, plaintiff.

Paul W. Hunn, Daniel M Burns, Walsh Anderson Underwood Schulze & Aldridge, Austin, TX, for Granbury Independent School District, William Harris, Marsha Grissom and Troy Green, defendant.

D. Michael Wallach, Wallach & Moore, Fort Worth, TX, for John David Talmage, defendant.

James Warren Lane, Law Office of Jim Lane, Fort Worth, TX, for Richard W. Lee a/k/a Richard Wilson Lee, defendant.

## MEMORANDUM OPINION and ORDER

MCBRYDE, District Judge.

Came on for consideration the motion of defendants Granbury Independent School District ("Granbury ISD"), William Harris ("Harris"), Troy Green ("Green"), and Marsha Grissom ("Grissom") to dismiss and for summary judgment. The court, having considered the motion, the response of plaintiffs, John and Jane Doe, individually, and on behalf of a minor plaintiff, Jane Doe II, the record, the summary judgment evidence, and applicable authorities, finds that the motion for summary judgment should be granted.

### I.

#### Plaintiffs' Claims

On August 5, 1997, plaintiffs filed their original complaint; on October 31, 1997, their first amended complaint; and, on February 6, 1998, their second amended complaint. Plaintiffs allege that, while attending Granbury Middle School, Jane Doe II, a minor, was sexually harassed and assaulted by her band director, John David Talmage ("Talmage"); and, while a student and Granbury High School, Jane Doe II was sexually harassed and assaulted by her high school band director, Richard W. Lee ("Lee"). Harris was the superintendent of Granbury ISD, Green the principal of Granbury High School, and Grissom the principal of Granbury Middle School at the time the alleged abuse took place. Plaintiffs sue movants under 42 U.S.C. § 1983 and also assert a claim against Granbury ISD under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–88.

### II.

#### Movants' Motion

On March 13, 1998, movants filed a motion to dismiss and motion for summary judgment. The reference to a motion to dismiss is perfunctory and does not appear to have been intended as a serious motion. Plaintiffs' claims are sufficiently pleaded and movants have not shown that plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *Conley v. Gib-*

*son,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The motion for summary judgment is relatively straightforward. As for the § 1983 claim, movants maintain that plaintiffs cannot establish that the individual defendants acted with deliberate indifference and that they cannot establish a custom, practice, or policy of Granbury ISD that caused any injury. As for the Title IX claim, Granbury ISD contends that none of its employees turned a blind eye to reports of abuse of Jane Doe II.

## III.

### Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256, 106 S.Ct. 2505. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.1994), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130

L.Ed.2d 127 (1994). An issue is material only if its resolution could affect the outcome of the action. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons,* 746 F.2d 265, 269 (5th Cir. 1984).

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita,* 475 U.S. at 597, 106 S.Ct. 1348.

## IV.

### Undisputed Facts

The facts established by the summary judgment evidence are as follows:

In August 1996, Harris became superintendent of Granbury ISD. Prior to that date he had not worked for the school district. Talmage and Lee were already employed at the time. Talmage had been hired prior to the 1986–87 school year; Lee had been hired prior to the 1989–90 school year. Prior to October 7, 1996, Harris did not have any knowledge that Talmage or Lee had been involved in any inappropriate conduct, sexual or otherwise, with any student of the Granbury ISD or with any person who had not reached the age of majority. On that date, he learned from representatives of the District Attorney's office that Talmage and Lee were being investigated on charges that they had engaged in indecency with a child and he was asked to attend a meeting with representatives of the Granbury Department of Police Services and the District Attorney's office. At that time, he was informed of the investigation of the allegations against Talmage and Lee. That afternoon, Lee left the Granbury High School campus and did not return. On or about October 9, 1996, Lee submitted his resignation, which Harris accepted on behalf of the Board of Trustees. On October 8, Harris suspended Talmage from his teaching duties and instructed him to leave Granbury

ISD property and to have no contact with students.

Harris did not take any steps to retaliate against Jane Doe II or deny her resources or counseling services available to other students. He was not aware of any such actions by any other Granbury ISD employees. At the time of the events the subject of this action, Granbury ISD had in place policies against sexual harassment and sexual abuse of students. No employee of the district had authority to implement policies inconsistent with the board's written policies.

Green was the principal of Granbury High School from the beginning of the 1992–93 school year until June 1997. At the time he came on, Talmage and Lee had already been hired. Talmage was not a member of the faculty at Granbury High School and Green had no supervisory authority over him. At no point prior to October 7, 1996, did Green have any knowledge that Talmage was involved in any inappropriate conduct, sexual or otherwise, with any student of the Granbury ISD or with any person who had not reached the age of majority. On that date, Harris informed him that Talmage was being investigated on charges that he had engaged in indecency with a child.

Prior to September 30, 1996, Green did not have any knowledge that Lee had been involved in any inappropriate conduct, sexual or otherwise, with any student of the Granbury ISD or with any person who had not reached the age of majority. On that date, Green met with Pam Carver ("Carver") who informed him that during a conversation in Lee's office on or about September 19, 1996, she thought she had observed Lee make contact with Jane Doe II's leg and that Jane Doe II may have also made contact with Lee's leg. Carver said that she felt uncomfortable about what had occurred. Following that meeting, Green met with Lee to discuss the allegations of Carver. Green instructed Lee that if his plans for the evening involved any interaction with students, that he was to change his plans.

On October 1, 1996, Green informed his supervisor, John Paul Jones, of the allegations made by Carver and together they devised a plan of action. Green met with Lee and told him that he would be conducting an investigation into the allegations. He informed Lee in general terms what allegations had been made. That afternoon, he met in person with Jane Doe II and her mother. Jane Doe II denied the existence of any inappropriate relationship between her and Lee. Jane Doe also denied the allegations and indicated that Lee was a family friend and that she was amazed anyone would make such allegations regarding him. Jane Doe told Green that Jane Doe II's former boyfriend had told her that he did not think some of the things Lee and Jane Doe II were doing were appropriate, although he would not elaborate. Jane Doe attributed the remarks to jealousy. On October 2, 1996, Green met again with Lee and informed him that he was unable to corroborate the allegations at that time. He cautioned Lee that he would personally investigate any further complaints of a similar nature and warned Lee against having any improper relationship with district students. On October 3, Green contacted Carver and informed her of the results of his investigation. He told her that Lee and Jane Doe II had both denied the existence of any inappropriate relationship and asked if Carver had any further information that might aid in the investigation. Carver was unable to provide any additional information.

At approximately 9:30 p.m. on October 4, a school counselor told Green that another parent would like to speak with him regarding Lee and a band student. He arranged to meet with the parent on the following Monday morning so that he could review the information.

At 9:50 a.m. on October 7, Green was asked to attend a meeting with representatives of the District Attorney's office. At that time he was informed of their investigation of allegations of indecency with a child against Lee. At 2:00 p.m., Green brought Lee to his office to be interviewed by the investigating officers. Following the interview, Lee left the Granbury High School campus and did not return. On October 9, 1996, Green received Lee's resignation. At no time did Green take any steps to retaliate against Jane Doe II or deny her resources or coun-

seling available to other students. Nor was he aware of any such actions by any other Granbury ISD employee.

Grissom served as the principal of Granbury Middle School from the beginning of the 1990–91 school year until the end of the 1996–97 school year. She is currently employed as associate principal for Granbury High School. At the time she became middle school principal, Talmage and Lee had already been employed by Granbury ISD.

Lee was not a member of the faculty at Granbury Middle School at any time Grissom served there and she had no supervisory authority over Lee. At no point prior to October 7, 1996, did she have any knowledge that Lee was involved in any inappropriate conduct, sexual or otherwise, with any student of Granbury ISD or with any person who had not reached the age of majority. On or after that date, she learned through media reports that Lee was being investigated on charges that he had engaged in indecency with a child.

In September 1995, Grissom was approached by a parent who noted that Talmage had been observed holding hands with a young woman at a Granbury Middle School open house. Grissom had also observed the behavior during the open house and recognized the young woman as the daughter of a woman with whom Talmage was romantically involved at the time. Grissom had observed Talmage, the woman, and her daughter all holding hands in public the previous summer and did not believe that Talmage was engaging in behavior that the mother had not previously witnessed. Grissom discussed the matter with Talmage and he informed her that he had attended the open house as the girl's parent. Grissom noted that Talmage was not married to the mother and requested him not to hold hands in a similar manner in the future.

Grissom does not recall or have any records of any other reports concerning spanking or sexual overtures toward band students by Talmage before or during September 1995. She had no personal knowledge or

suspicion of such conduct and was not aware of any rumors of such conduct until December 4, 1995. On that date, Grissom received a call from Brian Daniell ("Daniell"), a detective with the Granbury Department of Police Services, who informed her that on the evening of Sunday, December 3, 1995, Officer Adrian Smith ("Smith") had responded to a security alarm at Granbury Middle School. Smith informed Daniell, who informed Grissom, that he had witnessed Talmage embracing a female and possibly nibbling on her ear.[1] Grissom requested Detective Daniell to come to the school immediately to speak with Talmage regarding the incident. Daniell reported that he was not ready to confront Talmage and instructed Grissom not to speak with any person about the incident. At Grissom's urging, detectives came to Granbury Middle School to collect yearbooks in an attempt to identify the female involved in the incident. After reviewing yearbooks, Officer Smith was unable to identify the female involved in the incident. As a result, Grissom did not believe that a Granbury Middle School student had been involved in the incident. She asked the police officers whether she could report the incident to her supervisors and was instructed not to speak with any person regarding the investigation. Grissom did not confront Talmage regarding the incident. She did not receive any further information on the investigation until October 7, 1996.

In December of 1995, Daniell was employed as a police detective by the Department of Police Services of the City of Granbury, Texas. On December 4, 1995, he received a report from Smith regarding a call he had made to Granbury Middle School on the evening of December 3, 1995. Smith reported that he had witnessed Talmage embracing a female and possibly nibbling on her ear and that the female appeared to be in her early teens. Because Smith was uncertain whether what he had witnessed involved any criminal activity on the part of Talmage, Daniell decided to try to identify the female so that she could be

---

1. The suggestion is made that the female was Jane Doe II, but there is no summary judgment evidence that she was. Talmage was apparently

tried and acquitted of charges relating to alleged abuse of Jane Doe II, but there is no summary judgment evidence on this subject either. ·

interviewed. He obtained a yearbook and photographs of the Granbury Middle School student body and reviewed them with Smith. Smith was unable to identify the female. Smith, Deputy Chief Ron Berryman, and Daniell met with Grissom on December 4, 1995. Berryman and Daniell instructed Grissom not to disclose anything she was told to anyone, including her supervisors, because police were trying to identify the female so that they could question her, and because there was no evidence that Talmage was involved in any wrongdoing. Officers advised Grissom that the details of what Smith had observed the evening before were sketchy and may have been completely innocent. Because the female student was never identified, the investigation was administratively closed.

Following Jane Doe II's allegations against Talmage and Lee, and after she had withdrawn as a student in the district, Jane Doe II attempted on several occasions to make contact with a male faculty member. Grissom was informed by another teacher that Jane Doe II had called several times and indicated that she would soon be 16 years old, which meant that she would have a driver's license and would be able to come to school on her own. Grissom informed Harris of the matter and was told that Harris would contact Jane Doe II's parents to ask that she not come to the school. Grissom believed the action necessary for the protection of all parties concerned.

## V.

### Application of the Law to the Facts

A. *Claims Under 42 U.S.C. § 1983 :*

 The law is well-settled that liability under § 1983 cannot be premised on a theory of *respondeat superior* or vicarious liability. *Monell v. Dep't of Soc. Serv. of City of New York,* 436 U.S. 658, 690–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Johnson v. Moore,* 958 F.2d 92, 93 (5th Cir.1992).

A supervisory school official can be held personally liable for a subordinate's violation of an elementary or secondary school student's constitutional right to bodily integrity in physical sexual abuse cases if the plaintiff establishes that:

(1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and

(2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and

(3) such failure caused a constitutional injury to the student.

*Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 454 (5th Cir.1994), *cert. denied,* 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994). And, to prevail on their claims against Granbury ISD, plaintiffs must show that Jane Doe II's constitutional rights were violated through the execution of an official policy of Granbury ISD. *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1304 (5th Cir.1995), *cert. denied,* 517 U.S. 1191, 116 S.Ct. 1680, 134 L.Ed.2d 782 (1996). It is not enough for the plaintiffs to merely identify conduct properly attributable to the school district; plaintiffs must also demonstrate that, through its deliberate conduct, Granbury ISD was the "moving force" behind the injuries alleged. *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626, 639 (1997). And, only the actions of district officials with final policymaking authority can subject Granbury ISD to such liability. *Eugene,* 65 F.3d at 1304 (citing City of *St. Louis v. Praprotnik,* 485 U.S. 112, 128, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). Under Texas law, the final policymaking authority in an independent school district rests with the district's board of trustees. *Id.; Jett v. Dallas Indep. Sch. Dist.,* 7 F.3d 1241, 1245 (5th Cir.1993); Tex.Educ.Code Ann. § 11.151(a) (Vernon 1996).

 Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). For a right to be "clearly estab-

lished," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *Anderson,* 483 U.S. at 639–40, 107 S.Ct. 3034. In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiffs have alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Duckett v. City of Cedar Park,* 950 F.2d 272, 276–80 (5th Cir.1992). In so doing, the court should not assume that plaintiffs have stated a claim, i.e., asserted a violation of a constitutional right. *Siegert,* 500 U.S. at 232, 111 S.Ct. 1789. Rather, the court must be certain that, if the facts alleged by plaintiffs are true, a violation has clearly occurred. *Connelly v. Comptroller,* 876 F.2d 1209, 1212 (5th Cir.1989). A mistake in judgment does not cause the employee to lose his qualified immunity defense. In *Hunter,* the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley [v. Briggs,* 475 U.S. 335,] 343[, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)]. . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued. . . .

502 U.S. at 229, 112 S.Ct. 534.

Each of the individual movants asserts entitlement to qualified immunity. Although there can be no question that plaintiffs have asserted the violation of a constitutional right that was clearly established at the time of the alleged sexual abuse of Jane Doe II, *see*

*Doe,* 15 F.3d at 455, plaintiffs have not come forward with summary judgment evidence to raise a genuine fact issue as to the objective unreasonableness of the conduct of the individual movants. In fact, plaintiffs wholly fail to address the issue. *See* Plaintiffs' Motion for Continuance and Response to Defendants' Motion to Dismiss and Motion for Summary Judgment ("plaintiffs' motion") at 15–16. Even if it could be said that the actions taken by the individual movants were negligent or ineffective, there is no evidence upon which a finding of deliberate indifference could be made.

■ The summary judgment evidence establishes that each time a report of suspected inappropriate activity was made, Green and Grissom reacted appropriately. Specifically, after Carver informed him of her experience, Green investigated the allegations. He discussed the situation with his supervisor and together they devised a plan of action. Green met with Lee and then with Jane Doe and Jane Doe II. Even if Green downplayed the significance of Carver's allegations, as alleged by Jane Doe, his statements in that regard would have been reasonable to calm Jane Doe.[2] After Jane Doe attributed the remarks of Jane Doe II's former boyfriend to jealousy, Green would have had no reason to speak with the boyfriend. More importantly, there is no evidence that had Green done anything differently the fact of the abuse would have been brought to light any sooner. As it was, within a week of Green's having been informed of Carver's allegations, the district attorney was investigating the allegations of indecency with a child against Lee. There is no summary judgment evidence that Jane Doe II suffered any further abuse between the time Green initiated his investigation and the time the district attorney became aware of the allegations. And, the only reasonable conclusion that could be drawn is that, as a result of Green's investigation, the fact of Lee's abuse of Jane Doe II came to light.

The summary judgment evidence further establishes that, even though Grissom had no

---

2. Doubtless, revelation of allegations of the kind made by Carver would be traumatic to any parent. Logic would dictate the downplaying of those allegations at the outset to reassure the parent to the effect that "these are only allegations at this point."

reason to believe that Talmage was acting inappropriately in holding the hand of a young woman during a Granbury Middle School open house, she nevertheless discussed the matter with him and informed him that he was not to hold hands in a similar fashion in the future. Grissom did not have reason to suspect any other inappropriate action by Talmage until December 4, 1995, when she was contacted by Daniell. At her insistence, detectives came to Granbury Middle School to collect yearbooks in an attempt to identify the female involved in the incident reported by Smith. Grissom insisted that the officers speak to Talmage, but they declined. Grissom acted reasonably in following the instructions of the police officers, especially in light of their having advised her that there was no evidence that Talmage was involved in any wrongdoing. Grissom's failure to document these incidents does not support a finding of deliberate indifference. There is no summary judgment evidence that Grissom learned of any facts or of a pattern of inappropriate sexual behavior by Talmage pointing plainly toward the conclusion that Talmage was sexually abusing Jane Doe II. Much less is there any summary judgment evidence that Grissom demonstrated deliberate indifference toward the constitutional rights of Jane Doe II and that such failure caused a constitutional injury to Jane Doe II.[3]

Finally, there is no summary judgment evidence of deliberate indifference on the part of Harris. There is no reason to believe that he had daily contact with Lee or Talmage or that he had any reason to know of their activities. The day after Harris learned of the allegations against Talmage, he suspended Talmage from his teaching duties and instructed him to leave Granbury ISD property and to have no contact with students. Harris accepted Lee's resignation

of behalf of the board of trustees of Granbury ISD.

 As for the liability of Granbury ISD, plaintiffs rely on a negligent hiring theory and on the alleged deliberate indifference of the individual movants. To prevail on their negligent hiring theory, plaintiffs must show that Granbury ISD was deliberately indifferent to the risk that a violation of the particular constitutional rights at issue here would follow the decision to hire Talmage and Lee. *County Comm'rs of Bryan,* 117 S.Ct. at 1392, 137 L.Ed.2d at 644; *Doe,* 113 F.3d at 1416. In other words, plaintiffs must show that Talmage and Lee were "highly likely to inflict the *particular* injuries suffered by [Jane Doe II]." *County Comm'rs of Bryan,* 117 S.Ct. at 1392, 137 L.Ed.2d at 644. "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id.* The only summary judgment evidence offered by plaintiffs to support this claim is hearsay testimony of Jane Doe that, at some unidentified point in time, Granbury ISD had a policy not to check into the background of employment candidates prior to hiring them. They present no competent summary judgment evidence with regard to any policy, much less any evidence that adequate scrutiny of the backgrounds of Talmage and Lee would have led to the conclusion that they would have violated Jane Doe II's rights in the manner alleged in this lawsuit.[4]

 Finally,[5] plaintiffs contend that movants acted with conscious indifference in retaliating against Jane Doe II for reporting

---

3. As noted, *supra,* there is no summary judgment evidence that Jane Doe II was abused by Talmage.

4. Although plaintiffs present evidence that Talmage sexually abused students in Mansfield, they present no evidence that a background check of Talmage would have revealed such conduct. The court notes that one of the students admits that her "one largest regret is not stopping [Tal-

mage] sooner." Plaintiffs' motion, Ex. I, statement of Megan White at 5.

5. There is no need for discussion of plaintiffs' contention that Granbury ISD is liable for the deliberate indifference of Harris, Green, and Grissom. As discussed, *supra,* there is no genuine issue with regard to deliberate indifference on the part of any of them.

the sexual abuse by Talmage and Lee. Specifically, they complain that: (1) Green refused to see John Doe on the day that Jane Doe II was withdrawn from school; (2) no one offered John Doe any assistance in getting Jane Doe II enrolled at another school; (3) no one offered Jane Doe II access to counseling services, which were provided to other students, and despite two explicit requests to the school board for assistance on her behalf; and (4) Jane Doe II was threatened with arrest if she came back to a Granbury ISD school campus. Although plaintiffs argue that there was something sinister about each of these alleged events, the summary judgment evidence simply does not create a genuine fact issue as to retaliation against Jane Doe II. For example, because there is no contrary summary judgment evidence, there is no reason to disbelieve that Green did not have time to see John Doe on the day that he came to school. Although Green's response may have seemed rude, there is no evidence that his reaction was in retaliation for what Jane Doe II had reported. As for the threat to Jane Doe II, there is no reason to disbelieve that Grissom thought it best for all concerned if Jane Doe II did not come back to campus. Plaintiffs do not offer any evidence to dispute that after Jane Doe II had withdrawn as a student in the district she attempted on several occasions to make contact with a male faculty member and had indicated that she would soon have a driver's license and be able to come to school on her own. Considering what had happened between Jane Doe II and other male faculty of Granbury ISD, it would have been inconceivable that allowing Jane Doe II to hang around campus would have been prudent.

██ Finally, on the subject of retaliation, Jane Doe states:

> Explicit requests for assistance were made on Jane Doe II's behalf to the Granbury ISD school board on at least two occasions. Never once did the school board, Marsha Grissom, Troy Green, William Harris, or any individual on behalf of Granbury ISD

offer Jane Doe II aid or assistance of any kind.

Plaintiffs' motion, Ex. B, affidavit of Jane Doe at ¶ 9. There is no further explanation of when the requests were made, the type of assistance requested, how the requests were conveyed or to whom. These conclusory statements simply do not raise a genuine issue of deliberate indifference. There is no summary judgment evidence that Harris, Green, or Grissom knew of any request or denied Jane Doe II any benefits available.[6]

### B. *Title IX Claim:*

██ Title IX provides, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The implied right of action under Title IX supports a claim for monetary damages. *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 76, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992); *Canutillo Indep. Sch. Dist. v. Leija,* 101 F.3d 393, 396 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2434, 138 L.Ed.2d 195 (1997). The Fifth Circuit has rejected the notion that Title IX creates strict liability on the part of school districts whose employees sexually abuse students, and has instead held that a school district can be liable for sexual harassment of a student by a school employee under Title IX only if (1) a school official, (2) who was invested by the school board with the duty to supervise the employee, (3) had actual knowledge of the abuse, (4) had the power to take action to end the abuse, and (5) failed to do so. *Rosa H. v. San Elizario Indep. Sch. Dist.,* 106 F.3d 648, 660 (5th Cir.1997). What is appropriate remedial action necessarily depends on the particular facts of the case, such as the severity and persistence of the harassment and the effectiveness of any initial remedial steps. *Id.* at 660–61. Liability is based on the subjective standard, that is "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

---

**6.** The fact that none of them may have offered Jane Doe II any aid or assistance does not mean that any of them denied such aid or assistance to her.

draw the inference." *Id.* at 658 (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

█ As discussed above, there is simply no evidence that any official had any knowledge of abuse of Jane Doe II by Talmage, much less failed to take action to stop it. And, although evidence of some activity between Lee and Jane Doe II was brought to the attention of Green, the evidence reflects that he took action to investigate the allegations. Apparently as a result of the investigation he started, Jane Doe II reported to the police that she had been sexually abused by Lee. There is no evidence that any abuse occurred after Green confronted Lee about the allegations.

█ Finally, plaintiffs maintain that Title IX provides a private right of action for retaliation. The facts of this case, however, are distinguishable from those in *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242 (5th Cir.1997). Here, there is no evidence that Jane Doe II was retaliated against for complaining of violations of Title IX. In fact, there is no indication that plaintiffs had ever even heard of Title IX before the filing of this action. *See Lowrey,* 117 F.3d at 254 (implication of a private right of action for retaliation serves the dual purposes of Title IX by creating an incentive for individuals to expose violations of Title IX and by protecting such whistleblowers from retaliation).

## VI.

### ORDER

For the reasons discussed herein,

The court ORDERS that movants' motion for summary judgment be, and is hereby, granted; that plaintiffs take nothing on their claims against movants; and that such claims be, and are hereby, dismissed with prejudice.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the disposition of the claims discussed in this memorandum opinion and order.

### FINAL JUDGMENT AS TO CERTAIN CLAIMS

In accordance with the court's memorandum opinion and order of even date herewith,

The court ORDERS, ADJUDGES and DECREES that plaintiffs, John Doe, Jane Doe, and Jane Doe II, take nothing on their claims against defendants Granbury Independent School District, William Harris, Marsha Grissom, and Troy Green, and that such claims be, and are hereby, dismissed with prejudice.

The court further ORDERS, ADJUDGES and DECREES that said defendants have and recover their court costs from plaintiffs.