United States Court of Appeals,

Fifth Circuit.

No. 94-20352.

Beryl EUGENE, Plaintiff-Appellant,

v.

ALIEF INDEPENDENT SCHOOL DISTRICT, Paula Conley and R.F. Griffin, Individually and in their Official Capacities, Defendants-Appellees.

Oct. 5, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, HIGGINBOTHAM and PARKER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Beryl Eugene filed this 42 U.S.C. § 1983 suit against Alief Independent School District, Paula Conley and R.F. Griffin, claiming that she was wrongly arrested and prosecuted in violation of her state and federal constitutional rights. Holding that summary judgment in favor of Alief Independent School District was proper and that summary judgment in favor of Paula Conley and R.F. Griffin was improper, we affirm in part and reverse in part.

I.

FACTS

Beryl Eugene's (Eugene) son attended Landis Elementary School in Alief Independent School District (A.I.S.D.) during the 1990-1991 school year. On September 28, 1990, Eugene attended a meeting at the school concerning her son. She voiced complaints because she believed that her son's placement in a special education program was racially motivated—he is black, and Alief is

1

predominantly white. She also complained that her son's medication had been mishandled by school personnel. Her son's teacher, a special education counselor, the assistant principal, and the school nurse initially came to the meeting. The nurse left after a short time and the assistant principal, concerned that Eugene was angry, summoned the principal, Paula Conley (Conley), and a school security officer, R.F. Griffin (Griffin).

Eugene decided to withdraw her son from school and asked that someone go get her son. The counselor left the conference room to get her son from his class. Eugene stated that she needed to use the restroom, left the conference room and started down the hall toward the classrooms. Eugene claims that she did not know that the hall led to the classrooms, and that she was simply looking for a restroom. Conley told Griffin to stop Eugene. Conley then pushed Eugene, and again told Griffin to stop her. Eugene claims that, when pushed by Conley, she attempted to explain that she simply needed to go to the bathroom. Griffin then pushed Eugene, and Eugene pushed back. Griffin then tripped Eugene, pushed her to the ground, and tried to handcuff her. When she resisted, Griffin began to choke her. She then bit his hand to make him let go of her neck. Griffin then told Eugene that she was under arrest, and she allowed him to handcuff her. Eugene was not aware that Griffin was a police officer during the confrontation.

Eugene was charged with assault on a police officer and found guilty by a jury. The state district judge, however, entered a verdict of not guilty as a matter of law.

2

Less than one year after her acquittal, Eugene filed suit against A.I.S.D., Conley and Griffin in state district court, alleging violations of her constitutional rights under the Texas and federal constitutions, as well as state common law causes of action.[1]  The defendants removed the case to federal district court.  A.I.S.D., Conley and Griffin then moved for summary judgment on five grounds:  (1) Eugene did not assert any constitutional violations actionable under 42 U.S.C. § 1983;  (2) Eugene could not recover against A.I.S.D. because she did not show that an official policy or custom of A.I.S.D. caused her rights to be violated;  (2) Conley and Griffin were entitled to qualified immunity;  (4) no cause of action existed for violations of the Texas state constitution;  and (5) Eugene's claims were barred by limitations.  The district court granted Appellees' motion for summary judgment on the first four grounds, and entered judgment in favor of Appellees.  Eugene appeals from that judgment.

II.

STANDARD OF REVIEW

This is an appeal from a summary judgment.  Our review of the record is plenary, *International Shortstop, Inc. v. Rally's,* 939 F.2d 1257, 1263 (5th Cir.1991), *cert. denied* 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992), and "in reviewing a grant of summary judgment we use the same standard used by the district

_____

[1]Eugene did not appeal the district court's granting of summary judgment dismissing her state common law causes of action.  Thus, the propriety of that dismissal is not before this Court.

3

court." *Dorsett v. Board of Trustees of State Colleges & Universities,* 940 F.2d 121, 123 (5th Cir.1991). "Having delved through the record to set forth all of the facts in a light most favorable to Sanders, we must now consider whether an application of the relevant law to those facts will lead us to the inescapable conclusion that Appellees are entitled to judgment in their favor as a matter of law." *Sanders v. English,* 950 F.2d 1152, 1159 (5th Cir.1992).

## III.

### VALIDITY OF EUGENE'S SECTION 1983 CAUSE OF ACTION

We first address whether the district court erred in holding that Eugene's allegations of malicious prosecution, retaliation, false arrest and bodily harm were not actionable under 42 U.S.C. § 1983 (Section 1983). Whether such acts are actionable is a question of law; consequently, we apply a *de novo* standard of review.

This circuit has explicitly held that malicious prosecution, false arrest and bodily harm are actionable under Section 1983 because they violate the Fourth and Fourteenth Amendments. *Sanders v. English,* 950 F.2d 1152, 1159 (5th Cir.1992). *See Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 450-51 (5th Cir.1994), *cert. denied* --- U.S. ----, 115 S.Ct. 70, 130 L.Ed.2d 25. Thus, the district court erred when it held that such claims were not actionable. This case is complicated, however, by the Supreme Court's decision in *Albright v. Oliver,* --- U.S. ----, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), which was decided while the instant case was on appeal.

4

*Albright* held that pretrial deprivations of liberty, such as malicious prosecution, are not actionable under the Fourteenth Amendment, but left open the possibility that such claims would be actionable under the Fourth Amendment. *Id.* at ----, 114 S.Ct. at 813. Because Eugene's Section 1983 claims were based on violations of her Fourteenth Amendment rights, her petition no longer states a claim after *Albright.*

While we do not question *Albright,* we will not affirm the summary judgment based on that case. Had the district court followed this circuit's case law when it decided the motion for summary judgment, it would have found that Eugene had a cause of action. When *Albright* was decided, Eugene would then have been able to amend her complaint to base her Section 1983 action on violations of the Fourth, rather than the Fourteenth, Amendment. Thus, to the extent that Eugene's summary judgment evidence establishes a fact issue as to whether she can maintain suit against Appellees,[2] she should be able to amend her complaint to base her claims on the Fourth Amendment.

IV.

EUGENE'S CLAIMS AGAINST A.I.S.D.

Eugene's summary judgment evidence failed to create a fact issue as to whether A.I.S.D. can be held liable under Section 1983. A.I.S.D. cannot be held liable under Section 1983 on a theory of

---

[2]Based on our holding in Section IV, *infra,* Eugene failed to create a fact issue as to whether A.I.S.D. can be held liable under Section 1983, and therefore cannot amend her complaint as to A.I.S.D. on remand.

respondeat superior for the actions of its employees. *See Monell v. Department of Social Services,* 436 U.S. 658, 690-94, 98 S.Ct. 2018, 2035-37, 56 L.Ed.2d 611 (1978); *Johnson v. Moore,* 958 F.2d 92, 93 (5th Cir.1992). Eugene must show that her Constitutional rights were violated through the execution of an official policy by A.I.S.D. *Id.* This circuit has defined official policy as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [district] ... or by an official to whom the [district] ha[s] delegated policy-making authority; or
>
> 2. A persistent, widespread practice of [district] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [district] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the district or to an official to whom that body had delegated policy-making authority.

*Johnson,* 958 F.2d at 94. Eugene advances two arguments to support her claim that her rights were violated by the execution of an official A.I.S.D. policy. First, she argues that force is a policy of A.I.S.D., and that excessive force is an accepted practice. Second, she argues that, under the site-based management philosophy adopted by the Texas Education Agency, A.I.S.D. delegated final decision-making authority on the Landis school campus to Conley. Because Conley ordered Griffin to arrest her, she argues, the arrest and subsequent prosecution were official policies of the school district.

Eugene's summary judgment evidence failed to create a fact issue as to whether the use of excessive force against parents was an official policy of A.I.S.D. In support of her argument, Eugene

6

presented evidence of a school manual allowing teachers to use physical force against children that were out of control, and of evidence of two alleged incidents of A.I.S.D. officials using excessive force against students. This evidence, however, is only indicative of A.I.S.D.'s policy of using force against unruly students; it does not show that A.I.S.D. had a policy to use excessive force against parents.

Eugene also failed to raise a fact issue as to whether Conley had the type of final policy-making authority that would subject A.I.S.D. to liability under Section 1983. Only the actions of district officials with final policy-making authority subject the district to such liability. *St. Louis v. Praprotnik,* 485 U.S. 112, 128, 108 S.Ct. 915, 926-27, 99 L.Ed.2d 107 (1988). Whether Conley had final policy-making authority is a question of state law. *Id.* If she can show that Conley had such authority, she would also have to show that Conley was responsible under state law for making policy relating to security decisions. Eugene failed to make such a showing.

Under Texas law, the final policy-making authority in an independent school district rests with the district's board of trustees. *Jett v. Dallas Indep. Sch. Dist.,* 7 F.3d 1241, 1245 (5th Cir.1993) (citing Tex.Educ.Code Ann. §§ 23.01 & 23.26(b) & (d) (Vernon 1987)). Eugene failed to create a fact issue as to whether A.I.S.D.'s trustees delegated final policy-making authority in the area of security to Conley. Texas law enumerates the duties of a principal, and security is not one of them. *See* Tex.Educ.Code Ann.

7

§ 13.352 (Vernon 1991). Moreover, although Texas law provides that the principal is to exercise decision-making authority in certain areas, even in those areas the principal must follow the guidelines and policies established by the school district. *Id.* Thus, under Texas law Conley did not have final policy-making authority for security.

Eugene also failed to create a fact issue as to whether A.I.S.D.'s trustees delegated policy-making authority for security to Conley. Eugene's sole support for her delegation theory was a bare assertion that, under the Texas Education Agency's site-based management philosophy, A.I.S.D. delegated final decision-making authority on the Landis campus to Conley. This bare allegation, unsupported by any evidence, is not sufficient to defeat summary judgment. In any event, assuming *arguendo* that Conley had decision-making authority for security, Eugene does not even argue that she had policy-making authority. When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the decision-maker's departure from them, are the act of the municipality. *Jett,* 7 F.3d at 1246-51. Thus, Eugene failed to create a fact issue as to whether policy-making authority for security was delegated to Conley.

Because Eugene failed to create a fact issue as to whether her rights were violated through the execution of an official A.I.S.D. policy, summary judgment in favor of A.I.S.D. was proper. Thus, the district court's decision to grant summary judgment in favor or

8

A.I.S.D. is affirmed.

V.

QUALIFIED IMMUNITY

The district court erred in holding that Conley and Griffin were entitled to qualified immunity. Public officials acting within the scope of their official duties are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 815-19, 102 S.Ct. 2727, 2736-38, 73 L.Ed.2d 396 (1982). However, qualified immunity does not shield a public official whose conduct violates clearly-established constitutional rights, if a reasonable person would have known that such conduct was unconstitutional. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396. To establish that Conley and Griffin are not entitled to qualified immunity, Eugene must satisfy a three-pronged test. First, she must show that she has asserted a violation of a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1992). Second, she must show that this right was clearly established at the time of Conley and Griffin's actions. *Id.* at 233-34, 111 S.Ct. at 1794. Third, she must show that Conley and Griffin's actions were objectively unreasonable. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

Eugene satisfied this three-pronged test. First, she asserted a violation of a constitutional right, her right under the Fourth and Fourteenth Amendments to be free from malicious prosecution, false arrest and bodily harm. *See Sanders,* 950 F.2d

9

at 1159; *Doe,* 15 F.3d at 450-51. Second, this right was clearly established. This circuit held that she had such a right long before the incident in question. *See, e.g., Shaw v. Garrison,* 467 F.2d 113, 120 (5th Cir.1972), *cert. denied* 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317. Finally, the summary judgment evidence created a fact issue as to whether Conley and Griffin's actions were objectively unreasonable. Arresting and prosecuting Eugene would be objectively unreasonable if Conley and Griffin did not have probable cause for the arrest and prosecution. To have probable cause, Conley and Griffin would have to possess knowledge that would warrant a prudent person's belief that Eugene had already committed or was committing a crime. *See Duckett v. Cedar Park,* 950 F.2d 272, 278 (5th Cir.1992). Griffin's deposition testimony, excerpts of which were properly before the district court as summary judgment evidence, supports a finding that she was committing no crime. The directed verdict of acquittal likewise militates against summary judgment. A reasonable fact finder could have concluded, based on this evidence, that she was simply looking for a bathroom when Griffin, whom she did not know to be a police officer, assaulted her. Thus, the evidence created a fact issue as to whether Conley and Griffin had probable cause to arrest and prosecute her.

Because the summary judgment evidence created a fact issue as to whether Conley and Griffin were entitled to qualified immunity, the court erred in granting summary judgment on that ground. Thus, the district court's decision is reversed as to the granting of

10

summary judgment against Eugene on her Section 1983 claims against Conley and Griffin.

VI.

CONSTITUTIONAL TORTS UNDER THE TEXAS CONSTITUTION

The district court correctly decided that Eugene's constitutional tort claims under Article I, Section 19 of the Texas Constitution were unmeritorious. Whether Eugene made out such a cause of action is a question of law, which we will review *de novo.* Texas does not appear to recognize violations of its constitution as an independent tort. One Texas Court of Appeals has stated that "Texas has a strong bill of rights, but ... no Texas statute or case ... provides a citizen the kind of redress afforded by 42 U.S.C. § 1983 or by *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics.* There is no state constitutional tort." *Bagg v. University of Texas Medical Branch,* 726 S.W.2d 582, 584 n. 1 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (citations omitted). *See also City of Houston v. Leach,* 819 S.W.2d 185 (Tex.App.—Houston [14th Dist.] 1991, no writ). *But see Jones v. Memorial Hosp. Sys.,* 746 S.W.2d 891 (Tex.App.—Houston [1st Dist.] 1988, no writ). This circuit has not passed on the question of whether an actionable "state constitutional tort" exists under Texas law, and we need not pass on the issue in this case. In *Gillum v. City of Kerrville,* 3 F.3d 117, 122 (5th Cir.1993), *cert. denied* --- U.S. ----, 114 S.Ct. 881, 127 L.Ed.2d 76, we held that, even if such a "tort" exists, Texas law would not allow government employees to be sued for exercising their discretionary authority.

11

Because the evidence is uncontroverted that Conley and Griffin were acting within their discretionary authority—that is, as a principal and as a security guard—the district court properly held that they were immune to any suit under state law, including one based on the Texas Constitution. *Id.* *See* Tex.Educ.Code Ann. § 21.912 (Vernon 1987).

## VII.

## LIMITATIONS

As an additional ground for affirming the summary judgment, Appellees argue that the statute of limitations had run before Eugene filed suit. Her Section 1983 claims are subject to a two-year statute of limitations. *See Wilson v. Garcia,* 471 U.S. 261, 279, 105 S.Ct. 1938, 1948-49, 85 L.Ed.2d 254 (1985); Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986). Those claims arise from events that occurred on September 28, 1990, and she did not file her original suit in state court until December 9, 1992. However, because she could not file suit based on malicious prosecution until December 10, 1991, when she was acquitted from the criminal charges against her, Eugene's cause of action did not accrue until she was acquitted. *See Johnson v. Louisiana Dept. of Agriculture,* 18 F.3d 318, 320-21 (5th Cir.1994). Because less than two years elapsed between the accrual of her claim and the date she filed her original petition in state court, her Section 1983 claims are not barred by limitations.

## VIII.

## CONCLUSION

12

We affirm the district court's summary judgment in favor of Alief I.S.D. and dismissing Eugene's state constitutional tort claims against Conley and Griffin, reverse and remand the district court's summary judgment in favor of Conley and Griffin insofar as it dismissed Eugene's 42 U.S.C. § 1983 claims against them, and order the trial court to allow Eugene to amend her complaint to bring her 42 U.S.C. § 1983 claims under the Fourth Amendment.

AFFIRMED IN PART AND REVERSED IN PART.