**Connie McCALL, Plaintiff,**

v.

**DALLAS INDEPENDENT SCHOOL DISTRICT; James Hughey; and the Board of Trustees for the Dallas Independent School District, Defendants.**

No. CIV.A. 3:99CV2118L.

United States District Court,
N.D. Texas,
Dallas Division.

April 17, 2001.

Cheryl B. Wattley, Attorney at Law, Wattley & Plumlee, Dallas, TX, Terry Kazan Ray, Attorney at Law, Law Office of Terry K. Ray, DeSoto, TX, for plaintiff.

Robert Charles Wendland, Attorney at Law, Scott Edmund Hayes, Attorney at Law, Vial Hamilton Kock & Knox, Dallas, TX, for defendants.

### MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

Before the court is Defendants' Motion for Judgment on the Pleadings, filed April 25, 2000. Upon careful consideration of the motion, response, reply, the pleadings on file in this case, and the applicable law, the court **grants in part** and **denies in part** the motion for the reasons stated herein.

### I. Factual and Procedural Background [1]

This lawsuit involves an alleged demotion in June, 1997 of Plaintiff Connie McCall ("McCall") from her position as an Executive Planner in the Real Estate division of Defendant Dallas Independent School District ("DISD") to a position as a Special Administrative Assistant in the

---

1. On a Rule 12(b)(6) motion to dismiss, the court accepts the plaintiffs' factual allegations as true. *Buckley v. Fitzsimmons*, 509 U.S. 259, 261, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999), *cert denied*, 530 U.S. 1229, 120 S.Ct. 2659, 147 L.Ed.2d 274 (2000). The same standards apply on a Rule 12(c) motion for judgment on the pleadings.

Transportation division. She alleges that this transfer was directed by then Superintendent of DISD, Yvonne Gonzalez ("Gonzalez"), despite the disagreement and objections of McCall's supervisors. The transfer was unrelated to any actions by McCall or her performance in her former position.

McCall appealed this action under DISD's grievance procedures. She was denied a "Step 2 level" hearing, which she contends would have been favorable to her because it would have been presided over by someone opposed to her removal, and she was unsuccessful at the "Step 3 level" hearing. She was unable to appeal any further because DISD could not produce the administrative record, that is, a tape recording of the hearing.

McCall filed suit in state court on July 23, 1999 against DISD; Dr. James Hughey ("Hughey"), in his official capacity as Interim Superintendent of DISD; and the Board of Trustees of DISD ("the Board"). Although styled as against all Defendants, this lawsuit in effect is against DISD only. Hughey is sued in his official capacity and such official capacity lawsuits are treated as lawsuits against the governmental entity of which the individual is an agent, employee, official or representative. *See Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Brooks v. George County, Miss.,* 84 F.3d 157, 165 (5th Cir.), *cert. denied,* 519 U.S. 948, 117 S.Ct. 359, 136 L.Ed.2d 251 (1996). Similarly, "a school district and its board of trustees, acting in its official capacity only, are one and the same entity." *New Caney Indep. Sch. Dist. Bd. of Trustees v. Burnham Autocountry, Inc.,* 960 S.W.2d 957, 959 (Tex.App.—Texarkana 1998, no pet.). The court therefore refers hereafter to DISD or Defendant to encompass Hughey and the Board as well.

McCall asserts claims under 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment guarantees of substantive due process and procedural due process; for tortious interference with her employment contract with DISD; and for "interference with contract based upon race."[2] Defendant removed to this court on September 17, 1999 and filed the motion for judgment on the pleadings on April 25, 2000.

## II. *Standard of Review*

Any party may move for judgment on the pleadings after the pleadings are closed and when it would not delay the trial. Fed.R.Civ.P. 12(c). A motion brought pursuant to Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.,* 914 F.2d 74, 76 (5th Cir.1990). If, however, matters outside the pleadings are also presented to the court for consideration, a Rule 12(c) motion must be treated as one for summary judgment. *See* Fed.R.Civ.P. 12(c); *Darlak v. Bobear,* 814 F.2d 1055, 1064 (5th Cir.1987). "Like a motion for summary judgment, a 12(c) motion should be granted only if there is no issue of material fact and if the pleadings show that the moving parties are entitled to judgment as a matter of law." *Perez v. Brown & Williamson Tobacco Corp.,* 967 F.Supp. 920, 924 (S.D.Tex.1997). A ruling on a motion for judgment on the pleadings pursuant to Rule 12(c) is reviewed under

---

**2.** As will be apparent in the following discussion, the petition is far from being a model of pellucid draftsmanship. Such lack of clarity complicates the court's task, and should be avoided at all costs.

the same standard as a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir.1995); *see also St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991).

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir.1995). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the face of the pleadings. *Id.; Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999), *cert. denied*, 530 U.S. 1229, 120 S.Ct. 2659, 147 L.Ed.2d 274 (2000). The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey*, 117 F.3d at 247. A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992).

## III. *Analysis*

### A. *Section 1983 Claims*

Although McCall refers to the First, Fifth, and Fourteenth Amendments to the United States Constitution in the preamble of the petition, her claims under 42 U.S.C. § 1983 are actually based only on the Fourteenth Amendment. There are no further mentions of the First and Fifth Amendments in the petition, or any alleged facts that would support a conclusion that Defendant violated those provisions. The petition asserts claims for violations of substantive due process and procedural due process, pursuant to the Fourteenth Amendment.[3] In the public employment context, a claim of substantive due process requires that the plaintiff had a protected property interest in her employment, and that the termination of the interest was arbitrary and capricious. *Harrington v. Harris*, 118 F.3d 359, 368 (5th Cir.), *cert. denied*, 522 U.S. 1016, 118 S.Ct. 603, 139 L.Ed.2d 491 (1997). Similarly, a claim of procedural due process requires that the plaintiff had a protected property interest in her employment, and that the termination of the interest was effected without the requisite procedural protections. *McDonald v. City of Corinth, Tex.*, 102 F.3d 152, 155 (5th Cir. 1996); *Browning v. City of Odessa, Tex.*, 990 F.2d 842, 844 (5th Cir.1993). A plaintiff who is deprived of a significant protected property interest is entitled, depending on the circumstances, to either a predeprivation or postdeprivation hearing. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The plaintiff must receive no-

---

**3.** The section of the petition asserting a claim for a violation of McCall's procedural due process rights is labeled "Procedural Due Process and Employment Discrimination Violations." As far as the court can determine, however, McCall has not actually asserted a claim for employment discrimination. There is, for example, no reference anywhere to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*

tice, a timely hearing, and an opportunity to respond. *Id.* at 545–46, 105 S.Ct. 1487.[4]

With respect to both claims, DISD argues that: 1) McCall has not properly alleged a protected property interest; and 2) McCall has not alleged that the constitutional violation was a result of a custom or policy of DISD, and therefore DISD may not be held liable. With respect to the substantive due process claim, DISD further argues that McCall has not properly alleged that the transfer/demotion was arbitrary and capricious. With respect to the procedural due process claim, DISD further argues that McCall's petition discloses that she received sufficient due process.

As discussed below, there are several deficiencies with respect to the factual allegations in the petition, as a result of which the petition fails to state a claim upon which relief can be granted for both of the due process claims. When a plaintiff has already come forward with specific and detailed allegations constituting her best case, that is the end of the matter and the court will dismiss the claim. *See Jacquez v. Procunier,* 801 F.2d 789, 792–93 (5th Cir.1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."); *Morrison v. City of Baton Rouge,* 761 F.2d 242, 246 (5th Cir.1985) ("We can assume, therefore, that the specific allegations of the amended complaint constitute the plaintiffs' best case . . . ."). In this situation, McCall has not had an opportunity to amend her petition, and the conclusory allegations offered do not clearly demonstrate that she has already made their best case. The court therefore is less confident that she can prove no set of facts in support of her claims which would entitle her to relief. Accordingly, dismissal of the claims at this point is inappropriate. *Jacquez,* 801 F.2d at 792 ("Dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified."). In repleading her § 1983 claims, however, McCall must meet the pleading requirements as described below.

### 1. *Property Interest*

■ DISD argues that McCall has not identified a protected property or liberty interest of which she was deprived as a result of government action. DISD focuses on McCall's allegations that she "suffered damage to her personal and professional reputation and standing in the community," *see* Petition ¶ 24, and contends that damage to reputation without more does not violate a property or liberty interest. *See Paul v. Davis,* 424 U.S. 693, 711–12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The court concludes that the petition relies on more than damage to reputation, as it alleges not only that McCall was removed from her former position but also that she was "demoted," *see* Petition ¶ 22.

"Because Texas is an employment-at-will state, employment contracts are terminable at will by either party absent a specific contract to the contrary. Thus, to prevail, [a plaintiff] must demonstrate that such a contract existed." *Schultea v. Wood,* 27 F.3d 1112, 1116 (5th Cir.1994) (footnote and citations omitted), *superseded on other grounds,* 47 F.3d 1427 (5th Cir.1995) (*en*

---

4. McCall cites *State of Texas By and Through Bd. of Regents of Univ. of Tex. Sys. v. Walker,* 142 F.3d 813, 818 (5th Cir.1998), *cert. denied,* 525 U.S. 1102, 119 S.Ct. 865, 142 L.Ed.2d 768 (1999) and *Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir.1993) as providing the standard for a procedural due process claim. A cursory examination reveals that those cases involve *substantive,* not procedural, due process claims.

*banc* ). The property interest in such employment extends beyond actual termination to other employment actions that affect the employee's economic benefits.

> When a public employee has a legitimate entitlement to his employment, the due process clause may protect as "property" no more than the *status of being an employee* of the governmental employer in question *together with the economic fruits* that accompany the position. Although the governmental employer may specifically create a property interest in a noneconomic benefit—such as a particular work assignment—a property interest in employment generally does not create due process property protection for such benefits.

*Jett v. Dallas Indep. Sch. Dist.,* 798 F.2d 748, 754 n. 3 (5th Cir.1986) (emphasis added), *aff'd in relevant part and remanded in part,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). A transfer involving "a decrease in salary or fringe benefits" therefore may constitute the deprivation of a property interest. *Schultea,* 27 F.3d at 1117.

Although the petition makes references to McCall's contract of employment with DISD, *see* Petition ¶ 6, and economic harm resulting from DISD's actions, *see id.* ¶ 24, it does not clearly allege that the contract precluded termination or transfer/demotion at will, or that the economic harm arose from a decrease in salary or fringe benefits. The court therefore concludes that the allegations in the petition are inadequate with respect to a property interest, and as such fail to state a claim upon which relief can be granted for both of the due process claims. The court will, however, allow McCall to replead the due process claims to repair this and other deficiencies noted in this opinion.

## 2. *Local Government Liability—Custom or Policy*

DISD contends that it cannot be liable to McCall because she has not identified a particular DISD policy or custom and alleged that it was the actual cause of any injuries she allegedly suffered. McCall contends that she has adequately alleged sufficient facts to state a claim against DISD based upon a policy, custom, or practice under two different theories: 1) that DISD delegated policy-making authority to then Superintendent Gonzalez, who "influenced" the decision to transfer/demote her; and/or 2) that the action in question is pursuant to either an official policy or a persistent and widespread practice sufficient to constitute custom that fairly represents DISD policy. The court agrees with DISD that McCall have failed to state a claim upon which relief can be granted regarding a policy or custom of DISD, and she will be required to replead this claim.

To resolve this issue, the court first cites the relevant authority which serves as a backdrop under which a local government can be held liable pursuant to 42 U.S.C. § 1983. A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of County Comm'rs of Bryan County, Okla. v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A governmental entity cannot be liable for civil rights violations under a theory of respondeat superior or vicarious liability. *Id.; see also Baskin v. Parker,* 602 F.2d 1205, 1208 (5th Cir.1979). Official policy is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [district] ... or by an official to whom the [district] ha[s] delegated policy-making authority; or

2. A persistent, widespread practice of [district] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [district] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the district or to an official to whom that body had delegated policy-making authority.

*Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir.1995) (alterations in original) (citing *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992)), *cert. denied*, 517 U.S. 1191 (1996); *see also Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984) (*en banc*) (*per curiam*); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984) (*en banc*) (*per curiam*), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). A plaintiff must identify the policy, connect the policy to the governmental entity itself, and show that his injury was incurred because of the application of that specific policy. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). A plaintiff must establish that the governmental entity through its deliberate conduct was the moving force behind the injury or harm suffered and must establish a direct causal link between the governmental entity's action and the deprivation of a federally protected right. *Bryan County*, 520 U.S. at 403–04, 117 S.Ct. 1382.

■ Liability must rest on official policy, meaning the governmental entity's policy, and not the policy of an individual official. *Bennett*, 728 F.2d at 769. The official complained of must possess

[f]inal authority to establish [school district] policy with respect to the action ordered.... The official must also be responsible for establishing final government policy respecting such activity before the [school district] can be held liable.... [W]hether an official had final policymaking authority is a question of state law.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Under Texas law, the final policymaking authority in an independent school district rests with the district's trustees. *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir.1993). An employee, agency, or board of a governmental entity is not a policymaker unless the governmental entity, through its lawmakers, has delegated exclusive policymaking authority to that employee, agency, or board and cannot review the action or decision of the employee, agency, or board. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340–41 (5th Cir.1989).

■ In light of Fed.R.Civ.P. 8(a)(2) and *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), Plaintiffs must provide in their pleadings "a short and plain statement of the claim showing that the pleader is entitled to relief." The "short and plain statement" must contain facts " 'that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Leatherman*, 507 U.S. at 168, 113 S.Ct. 1160 (quoting *Conley*, 355 U.S. at 47, 78 S.Ct. 99). While it is not necessary for a plaintiff to prove or establish at this stage that she was injured as a result of a specific policy or

custom of DISD, requiring her to identify the specific policy or custom and allege that the policy or custom adopted by DISD or a policymaking official was the "moving force" behind the alleged constitutional violation is in no way inconsistent with notice pleading or the mandate of *Leatherman.* Such requirement actually complements Rule 8 in that it puts a defendant on notice of the grounds on which a plaintiff's claim rests. In other words, the allegations of a complaint must not be conclusory; otherwise, a defendant is not placed on notice of the grounds for the claim. Conclusory allegations cannot survive a motion to dismiss. *See Guidry,* 954 F.2d at 281.

The court believes that language from two Fifth Circuit cases decided after *Leatherman* is illustrative and controlling: *Spiller v. City of Texas City, Police Dep't,* 130 F.3d 162 (5th Cir.1997), and *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521 (5th Cir.1996). In *Spiller,* the court stated:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom "was a cause in fact of the deprivation of rights inflicted." *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 525 (5th Cir.1994). To satisfy the cause in fact requirement, a plaintiff must allege that "the custom or policy served as the moving force behind the [constitutional] violation" at issue, *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 533 (5th Cir.1996), or that her injuries resulted from the execution of the official policy or custom, *Fraire v. Arlington,* 957 F.2d 1268, 1277 (5th Cir.1992). The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

*Spiller,* 130 F.3d at 167. Embodying this same principle and requirement with respect to pleading a cause of action regarding municipal policy or custom, but stated somewhat differently, the court in *Meadowbriar Home* stated:

> To support a claim based upon the existence of an official custom or policy, the Plaintiff must plead facts which show that: 1) a policy or custom existed; 2) the governmental policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred; and 4) the custom or policy served as the moving force behind the violation.

*Meadowbriar Home,* 81 F.3d at 532–33 (citation omitted).

The court has reviewed the petition in detail and finds that it does not contain the basic and fundamental allegations to put DISD on notice as to the basis for McCall's claims regarding school district policy or custom under either of the theories advanced by McCall. As to her contention that then Superintendent Gonzalez was the policymaker regarding personnel actions such as those at issue here, the court notes that as a matter of law the Board, rather than the Superintendent, is the policymaking authority for DISD absent specific arrangements to the contrary. *See Jett,* 7 F.3d at 1245. Gonzalez is a policymaker only if she had *final* policymaking authority—that is, a specific delegation of authority by the Board, the exercise of which by Gonzalez was not subject to review by the Board. *See Worsham,* 881 F.2d at 1340–41. The petition fails to allege any facts supporting a conclusion that such a delegation of final authority was made. Without such, actions by Gonzalez cannot be attributed to DISD for purposes of assessing liability.

The only allegation in the petition that directly addresses DISD's or the Board's involvement, as opposed to conduct by Gonzalez, is as follows: "All such actions were either taken under color of official DISD and Board policy or pursuant to a persistent, widespread practice of Defendants which, although not authorized by officially adopted and promulgated policy, is so common and well-settled and of which Defendants had actual or constructive knowledge, as to constitute a custom that fairly represents DISD or Board policy." Petition ¶ 23.[5] A virtually identical statement is included at ¶ 27. There is no specific allegation of a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by" DISD, see Eugene, 65 F.3d at 1304. The allegations of specific instances of misconduct in McCall's case do not constitute allegations of a "persistent, *widespread* practice of [DISD] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so *common* and well settled as to constitute a custom that fairly represents [DISD] policy," *id.* (emphasis added), sufficient to meet the standard. The petition's general allegations concerning DISD in ¶¶ 23 and 27 are conclusory and do not meet the basic requirements for pleading school district liability under § 1983 as set forth in *Spiller* and *Meadowbriar*.

The court concludes that the allegations in the petition are inadequate with respect to either final policymaking authority by Gonzales or a policy or custom of DISD. Accordingly, the petition fails to state a

claim upon which relief can be granted for both of the due process claims. The court will, however, allow McCall to replead the due process claims to repair this and other deficiencies noted in this opinion.

### 3. *Arbitrary and Capricious*

■ DISD argues that McCall has not adequately alleged that DISD's actions in demoting her were arbitrary and capricious. The court agrees. The fact that the petition does not use the words "arbitrary" or "capricious" is insufficient basis to dismiss the petition. *Russell v. Harrison*, 736 F.2d 283, 288 (5th Cir.1984). It is, however, necessary to go beyond general conclusory statements and plead facts which would support the conclusion that the action in question was arbitrary and capricious. *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387–88 (5th Cir.2001); *see also Cruz v. Skelton*, 543 F.2d 86, 91 (5th Cir.1976) (conclusory statement without more "is mere speculation, totally unsupported by factual averments, and is hence insufficient to support a § 1983 complaint"), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2980, 53 L.Ed.2d 1096 (1977); *Cook v. Whiteside*, 505 F.2d 32, 34 (5th Cir.1974) ("Without some factual foundation, Cook's assertion of arbitrary and capricious action is not sufficient in and of itself to state a claim upon which relief can be granted under 42 U.S.C.A. § 1983.").

Evaluated under these standards, the petition is deficient. The only statement concerning the reasons for the demotion/transfer is as follows: "This removal was not caused by any actions of McCall

---

5. The court further notes that the allegation in the petition does not even narrow the scope of the alleged policy, practice, and custom by specifying *what* the policy or custom encompassed. Did DISD and the Board have a policy or custom of demoting employees arbitrarily and capriciously? Did this apply to *all* employees, or only those who fit certain un-

specified criteria? Did DISD and the Board have a policy or custom of bypassing Step 2 level hearings and losing the tape recordings of Step 3 level hearings? The statement in the petition, even if not conclusory, would be much too general to put DISD on notice as to the basis for McCall's claims.

nor was it related to her performance as an Executive Planner." Petition ¶ 8. That is a conclusory statement rather than a factual averment, and in any event is simply insufficient to support a conclusion that the removal was arbitrary and capricious. There are a number of legitimate reasons that employees might be demoted or transferred other than their performance—for example, a reorganization that eliminates the previous position, a critical need for someone in the new position, the need to place another employee whose job has been eliminated, financial considerations, and so on. McCall must plead more than, in effect, that her performance was not the reason for the removal and therefore DISD could have had not rational reason.[6]

Without any factual allegations in the petition (or, for that matter, in the response brief), DISD does not have "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99. The court therefore concludes that the petition fails to state a claim upon which relief can be granted with respect to the substantive due process claim. The court will, however, allow McCall to replead the substantive due process claim to repair this and other deficiencies noted in this opinion.

### 4. *Adequacy of Process Received*

 Finally, DISD argues that the procedural due process claim must fail because the petition admits that McCall did receive all the process she was due, in the form of the Step 3 level hearing. The

court concludes that the petition does not clearly state facts demonstrating that McCall did not receive the requisite due process, but does not agree with DISD that the petition clearly demonstrates otherwise.

McCall appears to base her procedural due process claim upon: 1) the denial of a Step 2 level hearing, *see* Petition ¶¶ 13–15, 26; and 2) the inability to produce the tape recording of the Step 3 level hearing, thus precluding further appeal, *see* Petition ¶¶ 18–20. Both of these are insufficient as stated. The petition fails to allege facts that would support a conclusion that the denial of a Step 2 level hearing, even though a Step 3 level hearing was provided, would violate McCall's due process rights, or in what ways the Step 3 level hearing was deficient under the standards of *Cleveland Bd. of Educ.* The assertions in ¶¶ 18–20 of the petition do not allege that the loss of the tape recording was intentional, as opposed to inadvertent or the result of negligence. "[H]arm inflicted due to government actors' simple negligence is categorically beneath the threshold of constitutional due process." *Brown v. Nationsbank Corp.,* 188 F.3d 579, 591 (5th Cir.1999) (citing *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662 (1986)), *cert. denied,* —— U.S. ——, 120 S.Ct. 2740, 147 L.Ed.2d 1004 (2000). The petition also does not make clear why McCall could not pursue further review, either through appeal or through another Step 3 level hearing, despite the absence of the tape recording.[7]

---

**6.** For example, the court assumes that *some* reason for the action was provided McCall at some point, whether when she was initially notified of the removal or during the Step 3 level hearing. One way to allege that the removal was arbitrary and capricious would be to state the basis given for the action and allege facts that would contradict it. Alterna-

tively, she might plead (if in fact true) that no reason was ever given for the action despite requests for an explanation, or that the action was part of a larger program of demoting people with no discernible rationale.

**7.** For example, was a further appeal (or a rehearing at Step 3 level) specifically refused because of the lack of a record? Did McCall

The court therefore concludes that the petition fails to state a claim upon which relief can be granted with respect to the procedural due process claim. The court disagrees, however, with DISD's contention that the petition *contradicts* such a deprivation. The petition concedes that a Step 3 level hearing was provided, but does not provide sufficient detail as to exactly what takes place in such a hearing. The pleadings therefore do not compel a conclusion that the hearing satisfied the requirements of *Cleveland Bd. of Educ.* as to the requisite due process. Accordingly, the court will allow McCall to replead the procedural due process claim to repair this and other deficiencies noted in this opinion.

## B. *Tortious Interference Claim*

McCall's next claim is labeled in the petition as both "Tortious Interference With Contract" and "BREACH OF CONTRACT." *See* Petition at 5. McCall argues in the response brief that this was a breach of contract claim but, the section heading notwithstanding, that is not what she actually pleaded. The petition states that she was *not* in breach of her contract,

*see* Petition ¶ 30, but does not allege that DISD *was* in breach of the contract. The relevant language is as follows: "The conduct detailed above has interfered with and made it extremely difficult, if not impossible, for Plaintiff to perform under their contract. The Board has thus tortiously interfered with Plaintiff's contract and the prospective benefits therefrom." *Id.* ¶ 31. The petition also states that "[t]he Board's interference was intentional, wrongful, malicious, and knowing." *Id.* ¶ 32. Such characterizations of the Board's mental state are relevant to a tort claim, such as tortious interference, rather than a breach of contract claim. The court therefore concludes that the petition states a tortious interference claim rather than a breach of contract claim.[8]

The elements of a tortious interference claim are "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of America v. Financial Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex.2000). Although the petition arguably alleges all of

---

explain, in her request for an appeal or rehearing, that the lack of a record was due to DISD's inability to produce the tape recording, rather than her fault? Did the appellate authority decline to make any accommodations or alternative arrangements despite that explanation?

**8.** If McCall desires to plead a breach of contract claim, she must do so in her amended complaint with some degree of factual specificity, sufficient to allege a viable claim. The court notes that "actions by the school board breaching the employment contract or violating school laws must first be appealed through administrative channels." *Jones v. Clarksville Indep. Sch. Dist.*, 2001 WL 282774, at *5 (Tex.App.—Texarkana Mar. 23, 2001, n.p.h.). Exhaustion of administrative remedies in such cases is a requirement for

subject matter jurisdiction, rather than merely an element of a breach of contract claim, under Texas law. *Id.* at *3. Implicit in the concept of pendant jurisdiction is that the state law claim is one for which state courts would have subject matter jurisdiction. If McCall asserts a breach of contract claim, therefore, this court will have subject matter jurisdiction only if she has exhausted her administrative remedies or an exception to the requirement applies. A complaint must include "a short and plain statement of the grounds upon which the court's jurisdiction depends." Fed.R.Civ.P. 8(a)(1). "Parties who seek to invoke the jurisdiction of the federal courts have the duty to establish jurisdiction by *affirmatively alleging the facts* conferring jurisdiction in their complaints." *Gaar v. Quirk*, 86 F.3d 451, 453 (5th Cir.1996) (emphasis added).

the elements of such a claim, it is deficient in two respects. First, DISD was one of the parties to the contract in question and "[t]ortious interference with a contract requires a *third-party stranger* to the contract who wrongly induces another contracting party to breach the contract." *Grizzle v. Texas Commerce Bank,* 38 S.W.3d 265, 286 (Tex.App.—Dallas 2001, pet. filed) (emphasis added) (citing *Holloway v. Skinner,* 898 S.W.2d 793, 794–95 (Tex.1995)). Second, a suit against DISD for tortious interference is barred by sovereign immunity. "Under the doctrine of sovereign immunity, a governmental unit is not liable for the torts of its officers or agents in the absence of a constitutional or statutory provision creating such liability. The Texas Tort Claims Act ('TTCA') creates a limited waiver of sovereign immunity.... However, the waiver of immunity does not extend to claims arising out of intentional torts." *Medrano v. City of Pearsall,* 989 S.W.2d 141, 143–44 (Tex. App.—San Antonio 1999, no pet.) (citations omitted). Because a school district is entitled to sovereign immunity, *see Cox v. Galena Park Indep. Sch. Dist.,* 895 S.W.2d 745, 748 (Tex.App.—Corpus Christi 1994, no writ), and tortious interference is an intentional tort, *see Exxon Corp. v. Allsup,* 808 S.W.2d 648, 659 (Tex.App.—Corpus Christi 1991, writ denied), a tortious interference claim is not available against a school district.

Based on these separate and independent grounds, the court concludes that McCall's tortious interference claims fails

to state a claim upon which relief can be granted. Because these deficiencies are fundamental to the claim, no purpose would be allowed by permitting McCall to replead the claim. Accordingly, DISD's motion for judgment on the pleadings is **granted** with respect to the tortious interference claim, and it is dismissed.

### C. "Interference with Contract Based Upon Race" Claim

■ The basis for this claim is unclear at best. Both DISD and McCall in their briefs refer to this as a claim brought under 42 U.S.C. § 1981.[9] DISD contends, citing *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), that 42 U.S.C. § 1983 provides the exclusive remedy for a violation of the rights established by § 1981. The court concurs. In *Jackson v. Dallas Indep. Sch. Dist.,* Civ. Act. No. 3:98–CV–1079–D, 1999 WL 58846 (N.D.Tex. Feb. 1, 1999), the court stated and held the following regarding 42 U.S.C. § 1981:

> The language of the statute enumerates only federal rights for individuals and does not create an express cause of action against those who violate these rights. *See Federation of African American Contractors v. City of Oakland,* 96 F.3d 1204, 1210 (9th Cir.1996). In 1989 the Supreme Court declined to imply a cause of action under § 1981 against state actors, holding that when Congress originally enacted §§ 1981 and 1983, it "thought that the declaration of

9. "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C.

§ 1981(a). McCall implies in her response brief that this claim is also brought pursuant to § 1983 for a violation of the Fourteenth Amendment's guarantee of equal protection. The court sees no indication of this in the petition itself, but because McCall must replead the claim in any event, the court will permit her to clarify this in the amended complaint.

rights in § 1981 would be enforced against state actors [only] through the remedial provisions of § 1983." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731–36, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Congress later amended § 1981 to add a section providing that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). This language does not grant an individual an express cause of action against a state official. *Tabor v. City of Chicago*, 10 F.Supp.2d 988, 992 (N.D.Ill.1998). Absent clear evidence from Congress to the contrary, the court declines to hold that the addition of § 1981(c) overruled the holding of *Jett*. *See, e.g., Dennis v. County of Fairfax*, 55 F.3d 151, 156 n. 1 (4th Cir.1995); *Tabor*, 10 F.Supp.2d at 992; *Reynolds v. Glynn County Bd. of Educ.*, 968 F.Supp. 696, 706–07 (S.D.Ga.1996), *aff'd*, 119 F.3d 11 (11th Cir.1997) (table); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 905 F.Supp. 993, 995 n. 2 (N.D.Ala.1995); *Johnson v. City of Ft. Lauderdale, Fla.*, 903 F.Supp. 1520, 1522–23 (S.D.Fla. 1995), *aff'd*, 114 F.3d 1089 (11th Cir. 1997); *Philippeaux v. North Cent. Bronx Hosp.*, 871 F.Supp. 640, 654–56 (S.D.N.Y.1994), *aff'd*, 104 F.3d 353, 1996 WL 680758 (2d Cir.1996), *cert. denied*, 520 U.S. 1105, 117 S.Ct. 1110, 137 L.Ed.2d 312 (1997).

*Id.* at *2.

McCall argues that the Eleventh Circuit has concluded that the 1991 enactment of § 1981(c) [10] *did* overrule *Jett* with respect to whether § 1981 offers an *implied* cause of action against a governmental actor. *See Federation of African American Contractors*, 96 F.3d at 1210–14. The court considers as better reasoned the conclusion *Jackson* and in *Philippeaux*, adopted in *Dennis*, that *Jett* was not overruled by § 1981(c) and therefore § 1983 still offers the exclusive remedy for a violation by a state actor of the rights established § 1981. The legislative history of § 1981(c) not only fails to indicate any intent to provide a cause of action against governmental actors, but also indicates that the intent of § 1981(c) was to codify the holding of *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), which held that § 1981 applied to nongovernmental entities as well. *Philippeaux*, 871 F.Supp. at 655. It would seem peculiar to conclude that Congress, in passing the Civil Rights Act of 1991 "expressly to overturn or modify a number of recent Supreme Court decisions," would acknowledge in the legislative history that § 1981(c) was intended to affirm *Runyon* while *sub silentio* overturning *Jett. See id.* at 655–56 & n. 9. Although the Fifth Circuit has not addressed the issue of whether § 1981(c) overturned the holding in *Jett*, the court is convinced by, and adopts, the reasoning in *Jackson, Philippeaux*, and *Dennis*. The court therefore concludes that § 1983 provides the exclusive remedy for a violation by a state actor of a person's rights under § 1981. Accordingly, no independent or stand alone cause of action may be brought against a state actor under § 1981. A claim for a violation of § 1981 by DISD must be brought under § 1983.[11]

---

10. "(c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."

11. The court further notes that even the Eleventh Circuit, which would allow a claim brought directly under § 1981 against a government actor, would not impose liability based on *respondeat superior* and would instead require a custom or policy by the gov-

This does not end the matter, because the exact basis under which McCall asserted her claim is unclear from the petition. The preamble to the petition mentions both § 1983 and § 1981, and the section of the petition dealing with "interference with contract based upon race" mentions neither. It is unclear, therefore, whether McCall intended to assert a stand alone cause of action under § 1981, or a claim brought under § 1983 for a violation of § 1981. Accordingly, the court will allow McCall to replead this claim under § 1983. The court further notes that this claim is also subject to the same pleading requirement of a custom or policy by DISD, noted above with respect to the due process claims, and any amendment of this claim therefore must also include specific factual allegations supporting a conclusion that the interference with the contract based upon race also was pursuant to DISD's custom or policy.

## IV. *Conclusion*

For the reasons stated herein, DISD's Motion for Judgment on the Pleadings is **granted in part** and **denied in part.** The tortious interference claim is dismissed with prejudice. McCall's remaining claims are also deficient and fail to state a claim upon which relief can be granted, but the court declines to dismiss those claims at this time. The court directs McCall to replead her claims, to assert the legal basis for her claim of "interference with contract based upon race" and cure the numerous other pleading deficiencies. An amended complaint must be filed within thirty days of the date of this order, and must include specific factual allegations which satisfy the standards set forth in this opinion regarding: 1) a protected property interest; 2) a custom or policy of DISD that was the moving force behind

ernmental entity. *See Federation of African*

the alleged violations; 3) actions by DISD that were "arbitrary and capricious"; 4) deficiencies in the due process offered McCall relating to her demotion; and 5) a breach of contract claim, if McCall chooses to plead such. Failure to comply with this order may result in dismissal of these claims without further notice.

*American Contractors,* 96 F.3d at 1215.